**Danny D. GADDY, Petitioner–Appellee,**

v.

**Kiyo Linden GADDY, Respondent–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

April 1, 1992.

Rehearing Denied May 8, 1992.

Application for Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Edward Thomas Landis, Chattanooga, for appellee.

## OPINION

GODDARD, Judge.

This is an appeal from two orders of the Circuit Court for Hamilton County. The first ordered the sale of property owned by Kiyo Linden Gaddy and the proceeds impounded, and the second awarded attorney fees to her former husband, Danny D. Gaddy to be paid out of the impounded funds.

Mrs. Gaddy appeals and in her supplemental brief raises the following issues:

I. WHETHER THE TRIAL COURT HAD PERSONAL JURISDICTION OR SUBJECT MATTER JURISDICTION REGARDING:

A. MODIFICATION OF CHILD CUSTODY FROM THE MOTHER.

B. MODIFICATION OF APPELLEE'S (FATHER'S) CHILD SUPPORT, ELIMINATING HIS CHILD SUPPORT OBLIGATION.

II. WHETHER THE TRIAL COURT COULD ORDER APPELLANT'S REAL ESTATE SOLD AND PROCEEDS IMPOUNDED, WHERE DIVORCE GRANTING REALTY TO APPELLANT WAS FINAL LONG BEFORE IMPOUNDMENT PROCEEDINGS WERE BEGUN AND WHERE NO SUPPORT ORDER WAS ENTERED AGAINST APPELLANT.

III. WHETHER THE AWARD OF ATTORNEY'S FEES AGAINST APPELLANT WAS ERROR, IN ABSENCE OF JURISDICTION AND IN ABSENCE OF SHOWING OF NEED.

Preliminarily, it should be pointed out that Mrs. Gaddy left Hamilton County with the children on October 25, 1987, and except for brief periods has not been in Hamilton County since that date.

The record on appeal is, to say the least, somewhat confusing. The following, in chronological order, is a list of selected pleadings and orders found in the file:

Timothy A. Deere, Chattanooga, for appellant.

1. *2–16–87.* Final judgment of divorce.

2. *10–1–87.* Voluntary order of dismissal by Mrs. Gaddy.

It does not appear that any proceedings were pending at the time this order was entered.

3. *11–13–87.* Order of temporary custody to Mr. Gaddy and restraining order against Mrs. Gaddy.

4. *8–11–88.* Order allowing 30 days to take action or the case stands dismissed.

5. *4–3–89.* Petition to modify final decree and award permanent custody of the parties' minor children to Mr. Gaddy, and to adjudge Mrs. Gaddy in contempt of court.

6. *6–2–89.* Motion by Mr. Gaddy for default judgment.

7. *8–2–89.* Answer of Mrs. Gaddy to petition to modify final decree.

8. *8–29–89.* Order directing real estate be sold and proceeds retained until further orders of the Court.

9. *8–29–89.* Motion to dismiss because of lack of jurisdiction.

10. *10–10–89.* Motion to require children to appear at hearing.

11. *11–1–89.* Order appointing *guardian ad litem* for children.

12. *3–26–90.* Order awarding permanent custody of the parties' children to Mr. Gaddy and ordering *guardian ad litem* fee in the amount of $1000, and attorney fee in the amount of $1000, the *guardian ad litem* fee to be paid by Mr. Gaddy and the attorney fee to be paid out of the proceeds.

13. *5–1–91.* Order retaining the balance of the funds from sale of the house and directing that they be placed in an interest bearing account. This order provided that Mr. Gaddy is entitled to no portion of the funds on deposit and awarded an additional *guardian ad litem* fee in the amount of $1476.23, and an additional attorney fee in the amount of $2500 beyond what was "to be paid through the funds in control of the Clerk."

■ As to the jurisdiction over the person, it is true that a self-executing order was entered on August 11, 1988, dismissing the case. However, a subsequent petition to modify the final order was filed on April 3, 1989, and Mrs. Gaddy, through her attorney, made a general appearance by answering the allegations of the petition. Thus, the Court acquired personal jurisdiction over her.

As to the subject-matter jurisdictional question, Mrs. Gaddy argues that the Trial Court did not have jurisdiction because Tennessee was not the home state of the children, they having been absent from Tennessee for a period of some four years at the time of the hearing below. She relies upon the following provision of T.C.A. 36–6–203, a part of the Uniform Child Custody Jurisdiction Act:

*36–6–203. Jurisdiction to make custody determination.*—(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(A) Is the home state of the child at the time of commencement of the proceeding.

"Home state" is defined by T.C.A. 36–6–202(5) as follows:

(5) "Home state" means the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period.

■ As to this issue, we first observe that there is no proof in the record that the children had resided in one location for the requisite period of six months. There is proof that the mother and, presumably, the children were at one time in Mexico and other proof from which an inference may be drawn that they were in New York, and still other indications that they were in Israel. However, there is no proof as to their period of residency in any of the above locations. Consequently, we are not in a position to find

that they had established a home state which would deprive the Tennessee Court of jurisdiction.

■ Moreover, and even more significant, is the holding in *State ex rel. Cooper v. Hamilton,* 688 S.W.2d 821 (Tenn.1985), wherein our Supreme Court had occasion to address this particular statute. In that case our Supreme Court held that the statute does not withdraw subject-matter jurisdiction of our courts, but rather prioritizes as between Tennessee and a sister state the exercise of such jurisdiction.

In the course of that opinion the Supreme Court stated the following (at page 825):

There are statements in the opinions of the Court of Appeals cited previously to the effect that after a six-month period of residence and the acquisition of a "home state" status, the courts of this state may assume jurisdiction to modify the decrees of other states under all circumstances. This is simply not what the statute provides, nor was it the intent of the drafters. The comments of the Commissioners to § 14 of the Uniform Child Custody Act make this clear. They state:

"Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state (citations omitted). In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court has previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere (citations omitted).

"For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6½ months (3½ months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the 'home state' of the child...." Unif. Child Custody Jurisdiction Act § 14, Commissioners' note, 9 U.L.A. 154 (1968).

This was the holding of the Supreme Court of Georgia in the case of *Steele v. Steele,* 250 Ga. 101, 296 S.E.2d 570 (1982). In that case a divorce decree had been rendered in Wisconsin, which unquestionably had jurisdiction at the time of rendition. Later the mother took the children to Georgia and resided in Georgia for more than one year prior to seeking a modification of the Wisconsin decree in that state. The father had remained in Wisconsin, and he instituted proceedings there to modify the Wisconsin decree. The Supreme Court of Georgia, reversing the trial court, held that even though Georgia had become the "home state" of the children, it should not exercise jurisdiction to modify the Wisconsin decree and that any relief would have to be sought in the original rendering state.

There can be no question but that the intention of the drafters of the Uniform Act was to give priority to the original rendering state, and not to other states, so long as at least one of the contestants to the original action remained in that state, and the state otherwise retained jurisdiction.

"The basic scheme of the Act is simple. First, one court in the country assumes full responsibility for custody of a particular child. Second, for this purpose a court is selected which has access to as much relevant information about the child and his family in the state as possible. Third, other essential evidence,

which is inevitably out-of-state in the case of an interstate child, is channeled into the first court which might be called the 'custody court.' Fourth, other states abide by the decision of the custody court and enforce it in their territory, if necessary. Fifth, adjustments in visitation and other ancillary provisions of the decree, and custody changes, if any, are as a rule made by the original custody court. Sixth, if the child and his family no longer have appreciable ties with the state of the original court, a new custody court is selected to take the place of the original one for purposes of adjustments and modifications, and pertinent information is channeled from the prior to the subsequent custody court." Bodenheimer, *"The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws."* 22 Vand.L.Rev. 1207, 1218 (1969).

■ As already noted, there is no showing that any other state has become the home state of the children, and even if such had been shown this fact would not necessarily deprive the Tennessee court of jurisdiction. *Hamilton* specifically addressed this question and quoted with approval from a Law Review article as follows:

In the law review article of Brigitte M. Bodenheimer, Reporter for the Special Committee preparing the Uniform Child Custody Jurisdiction Act, the following is stated:

"A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to State B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the 'home state' under section 3. The jurisdiction of state A continues and is exclusive as

long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years." Bodenheimer, *op. cit. supra* at 1237.

In light of the foregoing we conclude that the Trial Court acted properly in exercising jurisdiction.

■ With regard to the second issue, the Trial Court's order of sale was pursuant to an agreement of the parties, his order reciting the following:

This cause came on to be heard on the 31st day of July, 1989, at which time the parties, through their respective attorneys, announced an agreement to the Court. The agreement being that the Temporary Restraining Order entered on January 26, 1989 be amended to allow the sale of the property described therein, and located at 8123 Mill Creek Road in Hamilton County, Tennessee; and that the proceeds of the sale less any commission due the realtor handling the transaction, Lois Ramsey–Killebrew, as well as any closing costs be paid into the Circuit Court Clerk's office and held until the appropriate disposition in this matter.

Having agreed to the sale of the property, Mrs. Gaddy will not now be heard to complain.

Moreover, as to Mrs. Gaddy's complaint as to the order retaining the proceeds of the sale, we observe that the Trial Judge, having found Mrs. Gaddy guilty of contempt of court, would have had authority to incarcerate her until she complied with the orders of the Court relative to the custody of the children. It would seem anomalous indeed that the Court would be in a position to hold her person, but not her property.

■ As to the final issue regarding attorney fees, T.C.A. 36–5–103(c) provides the following:

(c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for

alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

The foregoing is authority for the Trial Judge to award attorney fees. Mrs. Gaddy insists that there is no showing that Mr. Gaddy is financially unable to pay his attorney fees. However, such a showing is not a prerequisite for awarding fees under the foregoing statute.

For the foregoing reasons the Trial Court is affirmed and the cause remanded for such further proceedings, if any, as may be necessary and collection of costs below. Costs of appeal are adjudged against Mrs. Gaddy and her surety.

SANDERS, P.J. (E.S.), and McMURRAY, J., concur.

### OPINION ON PETITION TO REHEAR

Appellant Kiyo Linden Gaddy has filed a petition to rehear which re-argues matters fully considered by the Court in its original opinion. The petition is accordingly denied at the cost of Mrs. Gaddy.

SANDERS, P.J. (E.S.), and McMURRAY, J., concur.