# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

JERRY DON LUMPKINS,                )
                                   )
    Plaintiff/Appellant,       )
                                   )    Sumner Chancery
                                   )    No. 91D-241
VS.                                )
                                   )    Appeal No.
                                   )    01-A-01-9401-CH-00034
BELINDA BAINES LUMPKINS,           )
                                   )
    Defendant/Appellee.        )

**FILED**

**Oct. 4, 1995**

**Cecil Crowson, Jr.**
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE JANE W. WHEATCRAFT, SPECIAL JUDGE

For the Plaintiff/Appellant:

John R. Phillips, Jr.
PHILLIPS & INGRUM
Gallatin, Tennessee

For the Defendant/Appellee:

Bruce N. Oldham
BEATY & OLDHAM
Gallatin, Tennessee

## MODIFIED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a dispute over child support for two pre-teen boys. Two years after their divorce in the Chancery Court for Sumner County, the parents returned to court seeking resolution of their disputes concerning the custody and visitation arrangements and the amount of child support. A special judge awarded the mother sole custody of the children, modified the father's visitation schedule, and directed the father to pay child support in accordance with the child support guidelines. The father takes issue on this appeal with the amount of his child support. We have determined that the amount of the father's child support should be modified to take all his income into consideration.

## I.

Jerry Don Lumpkins and Belinda Gail Baines Lumpkins were married for approximately eleven years. They have two sons, Michael who is twelve and Jonathan who is eight. Jonathan has mild learning disabilities as a result of contracting meningitis when he was eleven months old. Both Mr. Lumpkins and Ms. Lumpkins are employed by the Sumner County School System. Mr. Lumpkins is a teacher and basketball coach, and Ms. Lumpkins is a special education teacher.

The marriage foundered in June 1991, and Mr. Lumpkins filed for divorce in the Chancery Court for Sumner County. On November 20, 1991, the parties signed a marital dissolution agreement providing for joint custody and for alternating physical custody on a weekly basis during the school year and on a bi-weekly basis during the summer. Neither party was required to pay child support because they were sharing physical custody; however, the trial court directed Ms. Lumpkins to maintain health insurance coverage for the children and determined that the parties would share responsibility for the children's health expenses not covered by insurance. The trial court entered a final decree on December 4, 1991,

granting Mr. Lumpkins the divorce and approving the marital dissolution agreement.

Ms. Lumpkins sought to modify the divorce decree less than one year later. The parties compromised their disputes, and on August 12, 1992, the trial court entered an agreed order modifying the custody, visitation, and support arrangements. Ms. Lumpkins received primary custody of the boys, and Mr. Lumpkins received visitation each Wednesday night and a portion of each weekend. The holiday and birthday visitations remained unchanged, while the summer visitation schedule was left to the parties. Mr. Lumpkins also agreed to begin paying $200 in monthly child support because the children were no longer spending equal amounts of time with each parent.

Mr. Lumpkins remarried and filed a petition in May 1993 seeking sole custody because the children had not "thrived and progressed as anticipated by the parties" while in Ms. Lumpkins' care. Ms. Lumpkins responded by seeking sole custody because Mr. Lumpkins was "attempting to undermine the children's love and trust toward their mother." In June 1993, the trial court set Mr. Lumpkins' summer visitation from June 19 to July 18, 1993 and suspended his obligation to pay child support for July because the children would be living with him. The trial court also set rules for daily telephone contact with the children and ordered the parents to attend a seminar dealing with children coping with divorce.

A special judge heard the parties' requests for custody in July 1993. On August 18, 1993, the special judge granted Ms. Lumpkins sole custody and changed Mr. Lumpkins' visitation to each Wednesday night and every other weekend. The special judge also reaffirmed the holiday, birthday, and summer visitation arrangements already in place. Finding no reason to depart from the child support guidelines, the special judge ordered Mr. Lumpkins to pay $568 per month in child support. Mr. Lumpkins takes issue on this appeal solely with the amount of the child support award.

**II.**

Child support issues remain entrusted to the discretion of the trial courts. This discretion is now guided by the child support guidelines promulgated by the Department of Human Services pursuant to Tenn. Code Ann. § 36-5-101(e)(2) (Supp. 1994). The guidelines apply to all actions to establish or modify child support heard after October 13, 1989. Tenn. Code Ann. § 36-5-101(e)(2); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3) (1989). We review child support decisions in accordance with Tenn. R. App. P. 13(d), giving the trial court's factual findings, but not its interpretation of the guidelines, a presumption of correctness.

The child support guidelines are intended to decrease the number of impoverished children living in single-parent families and to make child support awards more equitable by ensuring more consistent treatment of persons in similar circumstances. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(2)(a), -.02(2)(b) (1989). They establish a rebuttable presumption with regard to the minimum acceptable level of support. Trial courts may deviate from the guidelines when applying them strictly would be unjust or inappropriate, but they must state their reasons for doing so in writing. Tenn. Code Ann. § 36-5-101(e)(1); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(8) (1989). The guidelines themselves describe some of the circumstances warranting a deviation. Tenn. Comp. R. & Regs. r. 1240-2-4-.04 (1989).

The guidelines employ a straightforward mathematical formula for calculating child support. The presumptive amount of child support the obligor parent must pay is a "flat percentage of the net income." Tenn. Comp. R. & Regs. r. 1240-2-4-.03(2) (1989). For the purpose of the guidelines, "net income" includes all the obligor parent's income "from any source," Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(a) (1989), reduced by deductions for withholding tax, FICA, and other court- ordered child support actually being paid. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(4) (1989). The percentage multiplier corresponds to the number of children for whom support is being set. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(5) (1989).

**III.**

This record reveals five shortcomings with regard to the calculation of Mr. Lumpkins' child support obligation between 1992 and 1993. These shortcomings include: (1) the absence of a clear evidentiary basis for the child support award in the August 1992 order; (2) the absence of an explanation for the August 1992 order's departure from the guidelines; (3) the calculation of Mr. Lumpkins' gross and net income for the purpose of the August 1993 order; (4) the apparent oversight concerning the responsibility for providing the children's health insurance; and (5) the recognition that Mr. Lumpkins' visitation exceeded the guidelines' average visitation period.

## A.
### THE AUGUST 1992 SUPPORT ORDER

Neither parent was required to pay child support prior to August 1992 because the children were spending equal amounts of time with each of them.[1] The August 1992 order changed this arrangement by awarding Ms. Lumpkins primary physical custody and by defining Mr. Lumpkins' visitation rights. As a result of this order, the children have been spending approximately 65 % of their time with Ms. Lumpkins and 35% with Mr. Lumpkins. The order also required Mr. Lumpkins to pay $200 per month in child support.

The present record does not enable us to determine with certainty how the trial court arrived at the $200 per month child support award. There are, however, reliable indications that the trial court simply approved the parents' agreement without an independent review contemplated by Tenn. Comp. R. & Regs. r. 1240-2-4-.02(4) (1989). The guidelines in existence at the time would have required persons with Mr. Lumpkins' gross income to pay substantially more child support than $200 per month.[2]

---

[1]Joint custody arrangements in which the children spend approximately equal amounts of time with each parent warrant deviating from the child support guidelines. *Gray v. Gray*, 885 S.W.2d 353, 356 (Tenn. Ct. App. 1994).

[2]Mr. Lumpkins' gross income in 1992 was at least $2,000 per month. According to the May 1991 revised tables prepared by the Department of Human Services to aid in applying the guidelines, persons with a gross income of $2,000 per month should have been paying $505.92

The August 1992 order does not contain a finding required by Tenn. Comp. R. & Regs. r 1240-2-4-.02(8) (1989) that following the guidelines would have been unjust or inappropriate. We presume that the trial court required Mr. Lumpkins to pay approximately one-third of the amount required by the guidelines because the children's overnight visitation was divided between the parents more equally than usual. Whether the amount of Mr. Lumpkins' additional visitation warranted such a significant decrease in his child support obligation is not at issue on this appeal because that order has been supplanted by a new one. It is sufficient for our purposes to note that the $200 per month child support award varied significantly from the support contemplated by the guidelines.

## B.

### THE AUGUST 1993 SUPPORT ORDER

The special judge's August 1993 support order did not include all of Mr. Lumpkins' income.[3] According to the Department of Human Services' May 1991 tables, a monthly child support payment of $568 corresponds to a monthly gross income of approximately $2,300. At the time of the hearing, however, Mr. Lumpkins' gross income from all sources was $32,967.69 per year or $2,748 per month.[4] Considering his gross income from all sources, the guidelines would have required Mr. Lumpkins to pay $663.36 per month in child support.

Even though the special judge decided not to deviate from the guidelines, the record contains proof of two circumstances that could warrant deviations. The guidelines provide that a child support award should be increased if the obligor parent is not paying for the children's health insurance. Tenn. Comp. R. & Regs.

_____

to support two children.

[3]The guidelines require the courts to consider all income from any source. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(a) (1989); _Stephenson v. Stephenson_, App. No. 01-A-01-9212-CH-00488, slip op. at 8, 18 T.A.M. 35-18, 7 T.F.L.L. 12-7 (Tenn. Ct. App. Aug. 6, 1993) (No Tenn. R. App. P. 11 application filed).

[4]Mr. Lumpkins' Sumner County pay stub states that his annual income from teaching was $28,176.69. Mr. Lumpkins also testified that he earned $4,800 from waiting on tables. For the purposes of this opinion, we are assuming that Mr. Lumpkins' part-time salary was his gross, rather than net, salary.

r. 1240-2-4-.04(1)(a) (1989). They also permit adjusting the child support if the amount of the obligor parent's overnight visitation varies from the average visitation period contemplated by the guidelines. Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(b) (1989).

The December 1991 divorce decree required Ms. Lumpkins to maintain health insurance coverage on her sons, and she has been paying for this coverage ever since. In accordance with Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(a), the special judge should have increased the amount of Mr. Lumpkins' child support by an amount equal to the amount necessary for Ms. Lumpkins to obtain this insurance - the difference between the cost of individual and family coverage.

The guidelines also contemplate that the non-custodial parent will have the children on overnight visitation for eighty days per year.[5] The current visitation agreement calls for the children to spend approximately 148 nights each year with Mr. Lumpkins.[6] Thus, Mr. Lumpkins has been exercising almost twice as much visitation than the average visitation period contemplated by the guidelines.

Recognizing that Mr. Lumpkins' summer visitation warranted a reduction in child support, the special judge excused him from paying child support during the summer when his sons were visiting with him. Even if Mr. Lumpkins' summer visitation is not considered, Mr. Lumpkins is still exercising thirty-eight more days of visitation during the year than the average visitation period. This additional visitation entitled Mr. Lumpkins to appropriate credit on his child support payments.

## C.

---

[5]Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(b) (1989) states that an "average visitation period" under a year includes: two days every other weekend (52 days), summer visitation (14 days), and holiday periods during the year (14 days).

[6]Mr. Lumpkins' court-ordered visitation includes: two days every other weekend (52 days), holidays during the year (14 days), summer visitation (30 days), and every Wednesday night (52 days).

Child support awards remain in the trial court's control and may be modified when warranted by the circumstances. At the time of the hearing in this case, Tenn. Code Ann. § 36-5-101(a)(1) permitted the courts to modify child support "only upon a showing of a substantial and material change of circumstances."[7] Neither the statute nor the guidelines define "substantial and material change of circumstances," but the term generally includes facts and conditions that have emerged since the entry of the original decree and that were neither determined nor anticipated in the original decree. *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993); *Hicks v. Hicks*, 26 Tenn. App. 641, 652, 176 S.W.2d 371, 375 (1943).

The record demonstrates a substantial change in the Lumpkins' circumstances since their divorce in 1991. The most significant change is the change in their custody and visitation arrangement. In addition, there appear to have been changes in the parties' income. There is also a large, unexplained variation between the amount of Mr. Lumpkins' child support in the August 1992 order and the amount of child support contemplated by the guidelines. Accordingly, the special judge had sufficient grounds to reconsider the amount of Mr. Lumpkins' child support.

Mr. Lumpkins' present child support obligation is less than one-third of the amount contemplated by the guidelines as they existed at the time of the hearing.

---

[7]Tenn. Code Ann. § 36-5-101(a)(1) was amended in 1994 to authorize the courts to increase or decrease child support awards

> [W]hen there is found to be a significant variance, as defined by the child support guidelines . . . between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

Act of April 21, 1994, ch. 987, § 3, 1994 Tenn. Pub. Acts 1007, 1010. A significant variance is one that exceeds fifteen percent. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3) (1994).

There is a significant variance between the amount of child support Mr. Lumpkins was required to pay in the August 1992 order and the amount of child support the guidelines would have required Mr. Lumpkins to pay. Since the 1992 order does not adequately explain the departure from the guidelines, Mr. Lumpkins' child support would be equally subject to revision under the 1994 revisions to the statute and the guidelines.

A strict application of the guidelines would require him to pay $663.36 per month, and he is paying only $200 per month. The circumstances of this case, however, warrant deviating from the guidelines because of Mr. Lumpkins' expanded visitation and because of Ms. Lumpkins' payment of the children's health insurance.

Mr. Lumpkins is already receiving some recognition for his expanded visitation because he is excused from paying child support during the month that his sons are visiting him during the summer. His additional visitation should be recognized but must be offset because Ms. Lumpkins is paying for the childrens' health insurance. Thus, we have determined that the amount of Mr. Lumpkins' monthly child support should be 90% of the amount required by the guidelines. Accordingly, we modify the amount of child support awarded in the August 1993 order from $568 to $597 per month.[8] This modification will take effect on the first day of the month next following the date of the issuance of the mandate in this case.

**IV.**

As a final matter, Ms. Lumpkins requested an additional award for her legal expenses on this appeal. Tenn. Code Ann. § 36-5-103(c) (Supp. 1993) permits a custodial spouse to recover reasonable legal expenses incurred in any proceeding to enforce a child support order. These expenses should be paid without regard to the custodial spouse's ability to pay because they were incurred on behalf of the children, not the parents. *Gaddy v. Gaddy*, 861 S.W.2d 236, 240-41 (Tenn. Ct. App. 1992); *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993); *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

Ms. Lumpkins incurred legal expenses on this appeal to preserve and enforce the orders requiring Mr. Lumpkins to pay child support. She is, therefore, entitled to an additional award for her attorney's fees on this appeal. On remand,

---

[8]Ninety percent of $663.36 is $597.02.

the court should permit the parties to present appropriate proof and should then award Ms. Lumpkins her reasonable legal expenses on this appeal.

## V.

We modify and affirm the order awarding Ms. Lumpkins child support and remand the case to the trial court for the proceedings required herein and for any other proceedings that may be required. We tax the costs of this appeal to Jerry Don Lumpkins and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE