# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | |
|---|---|
| NANCY RENEE McREYNOLDS (DELBRIDGE), | ) |
| | ) |
| Plaintiff/Appellant, | ) Bedford Chancery No. 19,185 |
| | ) |
| VS. | ) Appeal No. 01A01-9702-CH-00064 |
| | ) |
| ROBERT IRVING McREYNOLDS, | ) |
| | ) |
| Defendant/Appellee. | ) |

APPEAL FROM THE CHANCERY COURT OF BEDFORD COUNTY
AT SHELBYVILLE, TENNESSEE
THE HONORABLE TYRUS H. COBB, CHANCELLOR

# FILED

**October 3, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**TERRY A. FANN**
**R. STEVEN WALDRON**
**WALDRON AND FANN**
Murfreesboro, Tennessee
Attorneys for Appellant

**JOHN H. NORTON, III**
**NORTON & SMITH**
Shelbyville, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Nancy Renee McReynolds Delbridge (Mother) appeals the trial court's order denying her counterpetition to modify the joint custody arrangement previously agreed to by the parties and set forth in their final divorce decree. For the reasons stated hereinafter, we affirm the trial court's judgment.

The Mother and Appellee Robert Irving McReynolds (Father) were divorced in Bedford County in July 1994. Per their agreement, the final divorce decree awarded the parties joint custody of their two minor daughters. Although the decree awarded the Mother primary physical custody of the children, the decree set forth an arrangement whereby the children spent three nights per week (Wednesday, Thursday, Friday) with the Father and the remaining four nights per week with the Mother. Additionally, the decree permitted the Father to pick up the children and take them to church every other Sunday.

In March 1995, the Father filed a petition to change custody in which he asked the trial court to terminate the joint custody arrangement and to award him sole custody of the children. As grounds for this change, the Father alleged that the Mother was engaging in overnight visits with a male friend while the children were present and, further, that the Mother was consuming intoxicants around the children. The Father's petition also described conflicts over joint custody issues which had arisen between the parties since the divorce.

The Mother answered and filed a counterpetition in which she similarly requested the trial court to modify the joint custody arrangement by awarding her sole custody of the children. The Mother's counterpetition alleged that the following material change of circumstances warranted modification of the joint custody arrangement:

> That [the Father] constantly harasses [the Mother] to the point where she has been forced to place a block on her telephone. That, further, [the Father] intentionally places the minor children of the parties in the middle of an argument with [the Mother] even though [the Mother] has repeatedly advised him that doing so causes emotional harm to the children. That, [the Mother] has tried to cooperate with [the Father] in every respect in order to assure that the children's best interests are

preserved; however, [the Father's] attitude makes cooperation impossible.

The parties' daughters were six and seven years old, respectively, in August 1996 when the custody modification hearing took place. At the hearing, the Mother testified that the Father's hostility toward her had increased since the parties' divorce and had made the joint custody arrangement unworkable. According to the Mother, these problems began in August 1994, the month following the divorce. When the Father arrived at the Mother's house one day to pick up the children, the Father discovered that a male friend of the Mother was there working on an air conditioner. The Father became very hostile and initiated a loud, verbal confrontation with the man, whose name was Tom Delbridge. The Father terminated the confrontation only after Delbridge reminded him that the children were present.

After the Father filed his modification petition, the Mother married Delbridge and moved to the Rockvale community of neighboring Rutherford County. The Mother's relationship with the Father has continued to deteriorate since the divorce. As recently as July 1996, the month before the hearing, another angry confrontation occurred between the Father and Delbridge at a ballpark. The Father coached the children's softball team, and the Mother and Delbridge were there to watch the game. After the game, the Father and Delbridge argued over what time the Father was going to pick up the children for visitation the next evening. Again, with the children present, the Father became very loud and made threatening statements toward Delbridge.

In addition to the Father's confrontations with Delbridge, the Mother testified that the Father had made joint custody difficult in other ways. For example, the Mother testified that the Father had enrolled the children in a soccer camp and other programs without first consulting the Mother. Generally, the Father is 35 to 40 minutes late returning the children to the Mother's house. A dispute also arose after the divorce over whether the Father had paid his share of the children's child-care expenses. The Mother testified that she blocked

3

her telephone from receiving calls from the Father because he called so many times when the Mother had the girls that the Mother felt the Father was harassing them.

Despite these conflicts with the Father, the Mother acknowledged that both children were healthy and were very good students. Although both children are students in the Bedford County school system, and both the Mother and Delbridge are employed by the school system, the Mother and Delbridge live over 30 miles away in Rutherford County. Accordingly, on the three school mornings each week when she has the children, the Mother drives over 60 miles round trip to Bedford County. The Mother expressed a desire to enroll the children in Rutherford County schools the following school year. The Mother also acknowledged that the Father's problem of returning the children late began after the Mother moved to Rutherford County. Despite the inconvenience to the Father and the extra travel time for the children, on the weekends when the Father was permitted to take the children to church on Sunday morning, the Mother still insisted that the Father return the children at the scheduled time on Saturday evening. The Mother justified this decision by explaining that her time with the children was "very precious" to her.

In his testimony, the Father acknowledged that he had engaged in hostile confrontations with Delbridge, including the incident at the ballpark the month before the hearing, but the Father denied being the aggressor in these situations. The Father believed that the initial confrontation with Delbridge occurred before the parties' divorce was final. The Father testified that there was hostility between the parties at the time of the divorce and that, if anything, he was not as vocal in his animosity now as he used to be. The Father believed that the Mother put the block on the phone, not because his calls were harassing, but because the Mother did not want him to talk to the children. The Father admitted telling the Mother about the children's soccer camp on the Friday before the Monday the camp started, and he admitted often returning the children as much as 20 minutes late. The Father testified, however, that he alone handled the responsibility of transporting the children between his house in Bedford County and the Mother's house in

4

Rutherford County. The Father further testified that the children had always attended school and church in Bedford County and that most of their relatives lived there.

The Father filed his petition to change custody primarily because of his objection to the Mother's overnight visits with Delbridge in the presence of the children. Now that the Mother and Delbridge were married, this asserted ground for modification no longer existed. In closing arguments, therefore, the Father's attorney argued that no material change in circumstance had been shown and that the joint custody arrangement should be continued, "with the exception that [the Father] ought to have the ability on his Sundays when he takes the children to church, to keep them over that Saturday night, so that the [children] are not on the road four or five times during that two-day period."

At the conclusion of the custody hearing, the trial court orally ruled that it was declining to terminate the joint custody arrangement. In doing so, the trial court specifically rejected the Wife's claim that hostility between the parties constituted a change of circumstance which warranted a change of custody. The trial court instead found that

> [T]here was hostility at the time [of] the divorce . . . .
>
> . . . .
>
> . . . I don't see that there has been any increase in hostility since the time of the separation. I think it probably has lessened.

In determining that continuation of the joint custody arrangement was in the children's best interests, the court stated:

> . . . I haven't heard any proof that [joint custody] has adversely affected these children. Both parents say the children are happy; the children are healthy.

The court found that joint custody should be continued at least for the next school year because the children were closer to their school when they stayed with the Father at his home in Bedford County. That way, the children only had to make the 64-mile round trip three days per week rather than five days per week. The trial court subsequently entered a written order setting forth its rulings on the custody issue and related issues.

5

The Mother has appealed, challenging virtually every ruling and finding contained in the trial court's written order. Specifically, the Mother contends that the following rulings and findings are in error:

> C. . . . [T]he Court specifically [finds] that there has not occurred such a material and substantial change in circumstances as to warrant the entry of a modification order changing custody from joint to sole. There is no proof that joint custody has had an adverse impact on the welfare of the children.
>
> D. The Court, though finding some hostility between the parties, does not find that the hostility level has increased since the time of the parties' divorce.
>
> E. The Court does find some slight change in circumstances due to the move by [the Mother] of her residence to Rutherford County, Tennessee. Accordingly, on those alternating weeks when [the Father] has the right to take the children to church on Sunday, he will not be obligated to return the children from the time he receives them on Wednesday at 5:00 p.m. until the following Sunday at 1:00 p.m.
>
> F. The parties should continue to share the joint custody of their children, at least for the next year since [the Mother] testified that the children will be attending Bedford County schools for the current 1996-1997 school year. Should [the Mother] choose to enroll the children in some school system other than the Bedford County school system for the 1997-1998 school year, either party may petition the court to modify the joint custody situation at that time.
>
> G. The parties are ordered to continue the child support agreement as specified in their marital dissolution agreement with [the Father] being ordered to continue paying $500.00 per month as child support . . . . The Court specifically finds that, due to the joint custody arrangement, this is an appropriate case for deviating from the Tennessee Child Support Guidelines.
>
> H. Each party shall pay his or her own attorneys fees and litigation expenses.

If this were an appeal from an original custody proceeding, we might be hesitant to affirm the trial court's decision to award these parties joint custody of their children, given some of the difficulties related by the parties at the hearing. We note, however, that the parties agreed to this arrangement in the final divorce decree and that this is now a proceeding to modify that arrangement. In a proceeding to modify a prior custody order, the party seeking a change of custody has the burden of proving a material change in

circumstances compelling enough to warrant such a change. See Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn. App. 1991); see also T.C.A. § 36-6-101(a)(1) (1996) (providing that trial court retains jurisdiction over custody orders subject to such changes or modification as "exigencies" of case may require). A change of circumstances warranting a modification of custody includes "any material change of circumstances affecting the welfare of the child or children" and requires a showing of "new facts or changed conditions which could not be anticipated by the former decree." Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. App. 1993).

In Massengale v. Massengale, 915 S.W.2d 818 (Tenn. App. 1995), this court set forth the applicable standard for reviewing a trial court's determination of the issue of changed circumstances in a custody modification proceeding:

> In order to justify a change in a custodial arrangement, there must be "such a change in circumstances as will directly affect the welfare of the minor." Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. App. 1981). As in all non-jury cases, a trial court's determination on this issue is reviewed by us de novo; however, the record developed below comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the findings of fact supporting the lower court's judgment. Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn. 1984). In making our de novo review, we "do [ ] not pass on the credibility of witnesses." Bowman v. Bowman, 836 S.W.2d 563, 567 (Tenn. App. 1991). "Credibility is an issue for the trial court who saw and heard the witnesses testify and is therefore in the premier position to determine credibility (citation omitted)." Id.

Massengale, 915 S.W.2d at 819.

Based on the trial court's finding that no material change of circumstance had occurred since the parties' divorce, we affirm the trial court's denial of the Mother's counterpetition to change custody. In the past, we have held that the "unworkability of joint custody because of the recalcitrance of one or both partners" may constitute a change of circumstances warranting a change of custody. Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. App. 1993); accord Cheek v. Cheek, No. 03A01-9503-CV-00092, 1995 WL 507793, at *2 (Tenn. App. Aug. 29, 1995), perm. app. denied (Tenn. Jan. 8, 1996); Phillips v. Phillips, No. 01A01-9407-CH-00363, 1995 WL 336973, at *3 (Tenn. App. June 7, 1995).

7

In the present case, however, the trial court found that, if anything, the hostility between the parties had actually lessened since the time of the final divorce decree and, thus, that no material change of circumstance had been shown. The trial court also found no evidence that the children had been adversely affected by the joint custody arrangement. In accordance with the foregoing standard of review, we must presume that these findings are correct, unless the evidence preponderates otherwise.

We recognize that the evidence concerning the level of hostility between the parties in this case was disputed at the custody hearing. The trial court, however, was in a position to evaluate the credibility of the witnesses at the hearing, and the court apparently resolved this dispute in favor of the Father. As in Massengale, "we cannot say that the evidence preponderates against the trial court's findings of fact supporting its conclusion that there had not been a sufficient change in circumstances to justify a change in custody." Massengale, 915 S.W.2d at 820.

At the custody hearing, the Father acknowledged that there had been disagreements between the parties relating to the children's clothing, exchanging the children for visitation, and other matters. Accordingly, the evidence was undisputed that the parties have experienced some problems with the joint custody arrangement. In DeVault v. DeVault, No. 01A01-9601-CV-00012, 1996 WL 482968, at *3 (Tenn. App. Aug. 28, 1996), however, this court recently held that an award of joint custody is not precluded by the fact that the parties may experience some problems with the joint custody arrangement; an award of joint custody does not require that the parties be on friendly terms. This holding was based, in part, on the legislature's 1996 amendment of the child custody statutes, an amendment which effectively eliminated the judicially-created presumption against joint custody awards which previously existed in this state. DeVault, 1996 WL 482968, at **2-3 (citing 1996 Tenn. Pub. Acts. 1046).[1]

---

[1]As amended, the statute provides that:

> Except as provided in the following sentence, neither a preference nor a presumption for or against joint legal custody, joint physical custody or sole custody is established, but the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child. Unless the court finds by clear and convincing evidence to the contrary,

Although we affirm the trial court's order denying a change of custody, we remind the parties that the trial court is empowered to revisit its decision if future circumstances warrant. As this court previously has cautioned parties,

> [T]he Trial Court retains the power to change the form of custody. Such change will undoubtedly militate against the custodial rights of one of the parents. It therefore behooves both parents to strive mightily to make joint custody work.

Gray v. Gray, 885 S.W.2d 353, 355 (Tenn. App. 1994).

Inasmuch as the trial court always retains jurisdiction to modify its child custody orders, we regard as superfluous the trial court's ruling that, "[s]hould [the Mother] choose to enroll the children in some school system other than the Bedford County school system for the 1997-1998 school year, either party may petition the court to modify the joint custody situation at that time." We know of no procedural impediment to either party filing a future petition to change custody. The trial court may only grant such a petition, however, if the petitioner meets the burden of proving that a material change of circumstance has occurred which justifies changing custody. Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn. App. 1991). Although we question whether the Mother's decision to change the children from Bedford to Rutherford County schools would constitute such a change in circumstances, we note that this issue is not properly before the court at this time.[2]

In light of our affirmance of the trial court's decision to continue the joint custody arrangement, we affirm the trial court's decision not to increase the Father's child support obligation at this time. Per the parties' marital dissolution agreement, the final divorce

---

> there is a presumption that joint custody is in the best interest of a minor child where the parents have agreed to joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child. . . . The burden of proof necessary to modify an order of joint custody at a subsequent proceeding shall be by a preponderance of the evidence.

T.C.A. § 36-6-101(a)(2) (1996).

[2]We likewise decline to address the issue of whether the trial court erred in modifying the Father's visitation schedule on the weekends he takes the children to church. Although the Mother raised this in her statement of the issues presented for review, the argument portion of the Mother's brief fails to set forth her contentions with respect to this issue. Accordingly, this issue is waived. See Blair v. Badenhope, 940 S.W.2d 575, 576-77 (Tenn. App. 1996); T.R.A.P. 27. In any event, we find the trial court's resolution of this issue to be an equitable one.

decree required the Father to pay $500 per month in child support. Admittedly, this amount is less than the presumptive amount established by the Child Support Guidelines. Due to the continued joint custody arrangement, however, the trial court properly found that this was an appropriate case for deviating from the Guidelines. See Gray v. Gray, 885 S.W.2d 353, 356 (Tenn. App. 1994).

We also affirm the trial court's decision to deny the Mother's request for an award of attorney's fees and costs. Tennessee Code Annotated section 36-5-103(c) governs awards of attorney's fees in proceedings relating to child support and child custody:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

T.C.A. § 36-5-103(c) (1996). Courts have held that, under the foregoing statute, a party who successfully pursues or defends a change of custody petition is entitled to an award of attorney's fees. See D v. K, 917 S.W.2d 682, 686 (Tenn. App. 1995); Gaddy v. Gaddy, 861 S.W.2d 236, 241 (Tenn. App. 1992); Fenley v. Fenley, No. 03A01-9604-CH-00121, 1996 WL 469683, at *4 (Tenn. App. Aug. 19, 1996). In the present case, however, the Mother did not successfully pursue her counterpetition to modify custody because the petition was denied. Accordingly, we agree with the trial court that the Mother was not entitled to an award of attorney's fees.

As a final matter, we deny the Father's motion for damages for frivolous appeal. See Anderson v. Dean Truck Line, 682 S.W.2d 900, 902-03 (Tenn. 1984).

The trial court's judgment is hereby affirmed. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

10

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.