IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

JANUARY LYNN GRIFFIN,

     Plaintiff,

v.

BRIAN LEE GRIFFIN,

     Defendant.

Davidson Circuit No. 94D-1778
C.A. No. 01A01-9704-CV-00190

Hon. Muriel Robinson, Judge

**FILED**

**January 16, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

CHERYL J. SKIDMORE, Gallatin, Attorney for Plaintiff.

JACK GREEN, Nashville, Attorney for Defendant.

*REVERSED AND DISMISSED*

Opinion Filed:

**TOMLIN, Sr. J.**

     This is a child custody case with potential interstate ramifications. This case began as a divorce proceeding in the Circuit Court of Davidson County, wherein January Lynn Griffin ("mother") filed suit for divorce against Brian Lee Griffin ("father"), as well as seeking custody of the parties' minor child. On March 31, 1995 the trial court declared the parties divorced pursuant to T.C.A. § 36-4-129. Mother was granted custody of the parties' minor child, then fourteen months old, with father given visitation rights. On July 19, 1996, father filed a petition to change custody and to find contempt on the part of the mother in the Circuit Court of Davidson County, the same court in which the divorce had been granted earlier. Following a hearing, the trial court ordered custody of the parties' minor child changed from mother to father. No adjudication was made on the issue of contempt. On appeal mother has presented two issues for our consideration: (1) whether the trial court erred in changing custody from mother to father and (2) whether the trial court had subject matter jurisdiction of father's petition to change custody. For the reasons hereinafter stated, we hold that the trial court was in error in changing custody.

     Following the divorce, mother and child remained in the Davidson County area until late November-early December 1995, when mother and child moved to Hawaii to live with her mother and step-father, who was stationed there in the military. In January 1996, mother called father

1

from Hawaii, but would not give him any information as to where she was living or what her telephone number was. Through military sources, father ascertained where mother was living.

The record reflects that shortly after mother arrived in Hawaii she met a man in the Navy and moved in with him. She subsequently married him. In the spring of 1996, mother's new husband was transferred from Hawaii to a naval station in New York. In May 1996, mother telephoned father advising him that she was coming to Tennessee and that he could see and visit with the child upon her arrival. She also advised him at that time that she had married a member of the U.S. Navy and that she would be in Tennessee temporarily before going to his new duty station in New York. Upon arriving in Tennessee in early June 1996, it became necessary to place the child in a hospital in Jackson for a short while with a kidney infection. Subsequently, upon coming to Nashville, mother and father entered into a written agreement by which father was to have summer visitation with the parties' child from June 29, 1996 through September 29, 1996, at which time mother would be permitted to pick up the child to return to New York. At that time it was contemplated that mother and her husband would have some difficulty finding appropriate housing in New York and the visitation agreement would give them time to get settled in. The agreement also provided that father would have "agreeable visitation rights" until a court date could be set and that mother and father would get in touch with one another and work out the transportation. Mother further agreed to notify father of each phone number and address and to send pictures of their daughter to father.

After the execution of this agreement, some week or ten days later mother and her new husband were able to find housing sooner than expected. Contrary to the above agreement, she called on father to return the child to her, which he refused under the agreement. Father filed his petition to change custody several days thereafter.

### I. The Subject Matter Jurisdiction Issue.

The matter of jurisdiction was never raised by the parties before the trial court, nor was the issue tried in the trial court. Mother raised the issue in her brief before this court in a tangential way, by stating the following in the second grammatical paragraph of the Argument section of her brief:

> Mother would initially submit the trial court lacked jurisdiction to modify custody in this matter due to the fact the child had not been a Tennessee resident for six months prior to the filing of Father's Petition, thus it was error for the trial court

2

to make **any** custody determination.

Mother's counsel makes no citation to the Statement of the Evidence where this court might ascertain this "fact" as alleged by her, nor did she cite any law to this court.

The transcript in this case consists of a four and a half page Statement of the Evidence prepared by father and approved by the trial court. Father testified that mother moved to Hawaii in the latter part of November, 1995. On the other hand, mother testified that she left Tennessee to go to Hawaii in December, 1995. Mother removed the child from Hawaii sometime in May or June, 1996 at the latest. Father's petition to modify custody was filed in Davidson County on July 19, 1996. It appears to this court that there is no concise proof that Hawaii was established as a home state under T.C.A. § 36-6-202(5) (1996) that would destroy the jurisdiction of the Tennessee court, provided by T.C.A. § 36-6-203(a)(1)(B) (1996). See Gaddy v. Gaddy, 861 S.W.2d 236, 238 (Tenn. Ct. App. 1992). Accordingly, we are of the opinion that under these circumstances the Tennessee court retains jurisdiction of this custody dispute.

## II. The Custody Issue.

Our scope of review in custody cases is *de novo* upon the record, accompanied by a presumption of correctness. We must affirm, unless the preponderance of evidence is otherwise. Hass v. Knighton, 676 S.W.2d 554 (Tenn. 1984). In all such cases the paramount consideration is the best interest of the child.

In Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn. App. 1991), the Eastern Section of this court set out the burden that must be carried and the standard that must be met in a case such as this:

> When the issue before the Court is whether to modify a prior custody order, it need not repeat the comparative fitness analysis that is appropriate at the time of the original custody decree. Instead, in a modification proceeding, the trial judge must find a material change in circumstances that is compelling enough to warrant the dramatic remedy of changed custody. Moreover, the burden is on the non-custodial parent to prove changed circumstances. (citations omitted).

It appears to this court that the crux of the father's petition for change of custody was the care he observed being given by mother to their daughter. When his visitation with the child began, father noticed that the child was still in diapers, was underweight, still on a bottle and extremely withdrawn. A similar observation was made by the child's paternal grandmother, who added that the child had been potty trained and was off the bottle since sometime in mid or late

3

1995. As to these contentions, mother testified that if the child was underweight it was because of the kidney infection for which she had been hospitalized for a week to ten days prior to beginning the visitation. She also stated that she had put the child back in diapers for travel and had placed her on the bottle because she needed fluids.

In the opinion of this court, the evidence presented preponderates against the award of change of custody by the trial court. Stated another way, the father, the noncustodial parent, has not carried his burden of proving a material change in circumstances that would warrant the changing of custody, noted by this court in Musselman to be "a dramatic remedy."

In looking at the whole picture, it seems clear to this court that to some degree at least the parties are using this child as a "tool" or a "weapon" to get at one another. While there was no prohibition against mother removing the child from this jurisdiction, it could have been and should have been done in a more considerate manner. The damage done by this was in large measure rectified by mother asking father to exercise three months of continuous visitation in the summer of 1996, albeit in some measure to her benefit. Then, when it developed that mother and her new husband found living quarters much sooner than expected, rather than honoring the agreement that she initiated, she upset the apple cart by calling on father to return their child to her. This action at least partially precipitated (in this court's opinion) father's action in seeking to bring about a change of custody.

There is little or no evidence in this record as to the background of both father and mother, except it does seem apparent that there is little decent concern and affection for one another. They must not--we repeat, must not use this child as a pawn to get at one another. This child is an innocent victim of their inability or unwillingness to maintain a home in which to raise her with tender loving care. They must exercise every effort to do so in the future. If not, we remind both parents that a trial court, be it New York, Tennessee or Hawaii, would have the power under appropriate circumstances to place this child in a home where she can find constant love and affection and will be given the type of upbringing she deserves.

The judgment of the trial court changing custody from mother to father is reversed and father's petition dismissed. Costs in this cause on appeal are taxed one-half to father and one-half to mother, for which execution may issue if necessary.

_____

TOMLIN, SR. J.


_____

HIGHERS, J.            (CONCURS)


_____

FARMER, J.            (CONCURS)