IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 24, 2011 Session

# STATE OF TENNESSEE EX REL. JESSICA ELAINE DILLARD v. JEREMY WILLIAMSON BLANKS

**Appeal from the Juvenile Court for Dickson County**
**No. 07-09-137CS     A. Andrew Jackson, Judge**

---

**No. M2010-00901-COA-R3-JV - Filed September 20, 2011**

---

Mother of the parties' three-year-old child appeals the trial court's designation of Father as the primary residential parent. Mother, who was temporarily named the primary residential parent while the action was pending, contends the initial order by which she was appointed was not a temporary order, but a final order and, thus, *res judicata* applies. The trial court disagreed and entered a final order naming Father the primary residential parent of the parties' minor child. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Thomas J. Hendrickson, III, Nashville, Tennessee, for the appellant, Jessica Elaine Dillard.

J. Reese Holley, Dickson, Tennessee, for the appellee, Jeremy Williamson Blanks.

## OPINION

The child at issue was born on April 27, 2008 to Jessica Elaine Dillard ("Mother") and Jeremy Williamson Blanks ("Father"). The parents were not married and six months after the child's birth, the parents ended their relationship.

On July 2, 2009, the State of Tennessee filed a Petition to Set Support on behalf of Mother requesting that Father pay child support, provide medical insurance, and pay retroactive child support from the time of their separation in November 2008. On August 5, 2009, Father filed a motion seeking temporary physical and legal custody of the child. He

also filed an Answer to Mother's petition and a Counter-Petition to Establish Parentage. In his Answer, Father sought to be named the primary residential parent and receive child support from Mother.

At a hearing on August 14, 2009, the parties announced they had reached an agreement on some but not all issues and presented an order reflecting their agreement to the court for its approval. That order, however, was not signed until February 22, 2010. In the interim, on January 12, 2010, the parties filed an order setting the final hearing for February 22, 2010.

At the February hearing, the agreed order presented at the August 14 hearing, titled "Temporary Agreed Order," was approved by the court and entered. Pursuant to that order, Father was identified as the biological father of the minor child and Mother was identified as the primary residential parent. The order stated that Father was to maintain medical insurance for the child, to be responsible for one-half of any expenses not covered by medical insurance, and to pay child support in the amount of $285 per month. The Temporary Agreed Order entered on February 22 also expressly reserved the issues of retroactive medical insurance and child support.

In addition to the entry of the Temporary Agreed Order on that date, the court also conducted an evidentiary hearing during which Mother and Father testified as well as the maternal grandfather and the paternal grandmother. Father testified that he has a stable job where he has worked for over ten years and owns his own home. Father testified that Mother denied him visitation on Father's Day. Mother testified that she has lived in five different locations since the parties ceased living together in 2008; she currently resided with her father. Mother testified that she was not currently employed but was taking one class at community college and planned on enrolling in nursing school. Mother denied that she prohibited Father from having visitation with the child, but admitted that she had removed the paternal grandmother from an approved pickup list at the child's daycare. Both the paternal grandmother and maternal grandfather testified that the child seemed happy and well-adjusted, and that they had good relationships with the child and were willing to help their respective children with her care. The court took the matters at issue under advisement following the February 22 hearing.

On March 19, 2010, the trial court entered an order designating Father the primary residential parent, granting Mother visitation on alternating weeks until the minor child started school at which time the visitation schedule would change, and finding Father owed $1,954.42 in child support arrears. The trial court also ordered that neither party was to have an overnight guest in the presence of the minor child. Mother filed a timely notice of appeal.

Mother presents four issues on appeal. She contends: (1) the trial court erred in not finding that Father's custody claim was barred under the *res judicata* principle of issue preclusion; (2) the trial court erred in finding a material change in the minor child's circumstances justifying consideration of a change in custody; (3) the court erred in changing custody without conducting a comparative fitness analysis of the child's best interests; and (4) she should be awarded her attorney's fees at trial and on appeal. For his part Father presents one issue, contending that he should be awarded his attorney's fees on appeal.

**ANALYSIS**

I.

Mother contends that Father's custody claim was barred under the *res judicata* principle of issue preclusion. The problem with this contention, we have determined, is that the February 22, 2010 order, which is appropriately titled "Temporary Agreed Order," is not a final order to which *res judicata* principles attach. *See* Restatement (Second) of Judgments § 13 ("The rules of *res judicata* are applicable only when a final judgment is rendered.").

A trial court's order does not constitute a final appealable order until the court has adjudicated all the claims or the rights and liabilities of all the parties at issue. *See Hoalcraft v. Smithson*, 19 S.W.3d 822, 827 (Tenn. Ct. App. 1999). Indeed, an order that adjudicates an issue preliminarily is a temporary, interim or "interlocutory order." *See id.* To constitute a final order, the order must fully and completely define the parties' rights with regard to all of the issues, leaving nothing else for the trial court to decide. *Id.* (citing *State ex rel. McAllister v. Goode*, 968 S.W.2d 834 (Tenn. Ct. App. 1997); *Vineyard v. Vineyard*, 170 S.W.2d 917, 920 (Tenn. Ct. App. 1942); Restatement (Second) of Judgments § 41, cmt. a (1942)).

Accordingly, unless and until an order becomes final, "it remains within the [trial] court's control and may be modified any time prior to the entry of a final judgment." *Hoalcraft*, 19 S.W.3d at 827 (citing *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 328 (Tenn. 1982)); *see also Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983) (noting that an interlocutory order "can be revised at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all parties"); *Winter v. Smith*, 914 S.W.2d 527, 535 (Tenn. Ct. App. 1995) (stating that an interlocutory order is "subject to revision by the trial court any time prior to the entry of a final judgment adjudicating all the claims raised").

Furthermore, as the Tennessee Rules of Civil Procedure provide:

> [A]ny order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of the parties.

Tenn. R. Civ. P. 54.02.

In this case, the parties announced at the August 14, 2009 hearing that they had agreed upon certain parenting issues. In fact it was Mother's attorney who made the following statement to the court:

> This will be a temporary order adopted by the Court with Your Honor's agreement, and we will reserve the issue of retroactive support, retroactive medical expenses, and any other issues that may arise during the dependency (sic) of the temporary parenting plan, Your Honor.

Neither the announcement above nor the Temporary Agreed Order that followed made a final determination as to all issues. Thus, the February 22, 2010 Temporary Agreed Order was interlocutory and subject to the trial court's modification at any time. *See Fox*, 657 S.W.2d at 749; *Stidham*, 643 S.W.2d at 328; *Hoalcraft*, 19 S.W.3d at 827; *Winter*, 914 S.W.2d at 535. Furthermore, when the parties appeared for trial on February 22, 2010, their understanding was that the order was temporary. This is evident from the statement by the trial judge as he summarized the procedural posture of the case: "Pursuant to the child support order – I mean, to the *temporary order*, the mother was granted – was named as the *temporary primary parent*, and a visitation schedule was established." (emphasis added). Moreover, Mother did not argue the issue of res judicata at the August 22, 2010 hearing; therefore, that issue is waived for purposes of this appeal.

Mother also contends the trial court erred in finding a material change in the minor child's circumstances justifying a change in custody. We find this argument is without merit because there had not been a final determination regarding the designation of the primary residential parent or the parenting plan; therefore, Father did not have to establish a material change of circumstance to modify the Temporary Agreed Order. Under the principles of res judicata, proving a material change in the minor child's circumstances is only necessary when a parent seeks a modification of a final judgment.

As for the comparative fitness issue, the record reflects that the trial court did conduct a comparative fitness test, which was based in part on the testimony of Father, Mother, the maternal grandfather, and the paternal grandmother at the February 22, 2010 hearing. At the close of proof, both parties' attorneys made closing arguments regarding the factors surrounding custody and the best interests of the child.

For the reasons discussed above, we find no merit to the first three issues raised by Mother. We now turn our attention to the requests for attorney's fees.

II.

Both parties contend they should be awarded their respective attorney's fees. In cases involving the custody and support of children "counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." *Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005) (quoting *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989)). "The purpose of these awards is to protect the children's, not the custodial parent's, legal remedies." *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). There is no absolute right to such fees; instead, the court is afforded the discretion to award attorney's fees in such cases, but "their award in custody and support proceedings is familiar and almost commonplace." *Taylor*, 158 S.W.3d at 359-360 (quoting *Deas*, 774 S.W.2d at 170).

Mother asked to be awarded her attorney's fees in the trial court; however, the court, exercising its discretion, declined to award Mother her attorney's fees. We review the trial court's decision to deny Mother's request under the abuse of discretion standard. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Having reviewed the record and considered the factors we believe relevant to this issue, we are unable to conclude that the trial court abused its discretion in denying Mother's request to recover her attorney's fees at trial. Thus, we affirm the trial court's decision to not award Mother her attorney's fees incurred in the trial court.

Each party seeks to recover his/her attorney's fees incurred on appeal. Whether to award attorney's fees incurred on appeal is a matter within the sole discretion of this Court. *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). In determining whether an award for attorney's fees is warranted, we consider, *inter alia*, the ability of the requesting

party to pay his or her own attorney's fees,[1] that party's success on appeal, whether that party has acted in good faith, and whether an award of attorney's fees is equitable. *Id.*; *see also Sherrod*, 849 S.W.2d at 785. Considering Father's success on appeal, the good faith Father demonstrated throughout these proceedings, and the fact Mother had little if any chance of successfully challenging the trial court's final order based on the issue of *res judicata*, we hold that Father's request for attorney's fees is justified; Mother's is not. Therefore, on remand, the trial court should determine the reasonable and necessary attorney's fees Father incurred on appeal and make an appropriate award after considering the relevant factors.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Jessica Elaine Dillard.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[1] The ability to pay, however, "should not be the controlling consideration with regard to awards for legal expenses in custody or support proceedings."*Sherrod v. Wix* 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992) (citing *Gaddy v. Gaddy*, 861 S.W.2d 236, 241 (Tenn. Ct. App. 1992) (stating that a showing of ability to pay attorney's fees is not a prerequisite for awarding fees in disputes involving custody or child support). "It is certainly a factor to be considered, but trial courts may award attorney's fees without proof that the requesting party is unable to pay them as long as the award is just and equitable under the facts of the case." *Id.*