Thomas Richard GRAY,
Plaintiff/Appellee,

v.

Barbara Erland Trantham GRAY,
Defendant/Appellant.

Court of Appeals of Tennessee,
Middle Section.

March 23, 1994.

Rehearing Denied April 13, 1994.
Application for Permission to Appeal
Denied by Supreme Court
Sept. 26, 1994.

J. Russell Heldman, Nashville, for appellant.

R. Steven Waldron, Waldron and Fann, Murfreesboro, for appellee.

## OPINION

TODD, Presiding Judge.

The captioned defendant has appealed from a divorce decree, presenting the following issues:

1. Whether the Chancellor erred in awarding Mr. and Mrs. Gray joint custody of their two daughters, ages 10 and 5.

2. Whether the Chancellor erred in not awarding Mrs. Gray sole custody of the two Gray daughters and in setting Mr. Gray's regular visitation as he did.

3. Whether the Chancellor erred in not awarding Mrs. Gray child support in the amount of $1,165 per month in compliance with the Tennessee Child Support Guidelines.

At the time of trial, plaintiff was thirty-five years old and employed in Nashville at a base pay of $40,000 per year enhanced by an annual bonus which has amounted to as much

as $22,000. His working time is from 7:00 A.M. to 3:30 P.M., Monday through Friday.

At the same time, defendant was employed in Nashville from 7:00 P.M. to 7:00 A.M., Saturday to Monday morning (two shifts of twelve hours, each) for which she earns approximately $40,000 per year.

Both parties live in Murfreesboro, Tennessee, and commute from that city to Nashville to work.

The two children, aged ten and five, were enrolled in private schools.

■ Although joint child custody is generally disfavored, *Dodd v. Dodd,* Tenn.App. 1987, 737 S.W.2d 286; *Malone v. Malone,* Tenn.App.1992, 842 S.W.2d 621, there is no invariable rule against joint custody which is expressly provided by statute. T.C.A. § 36–6–101, *Baggett v. Baggett,* Tenn.App.1973, 512 S.W.2d 292; *Garner v. Garner,* Tenn. App.1989, 773 S.W.2d 245.

■ The Trial Court made the following pertinent findings:

... In many ways when we look at these parties as potential custodians for these children, the parties complement themselves, candidly, very well.

Mr. Gray, it appears, has been very much as we say, "a hands-on father." He has done a whole lot as far as these children are concerned; and, candidly, it appears that as the children were growing up both of these parents were very active in the day-to-day care for the children.

. . . .

The evidence shows, I think, that probably Mr. Gray is more affectionate to the children, and in terms of affection and touching, warmth of the relationship, probably he excels in that area. That is not to say that either parent loves the children more than the other or that the children love one parent more than the other.

Mr. Gray's family is here in town. That appears to be positive, although we have heard that perhaps there may be some negatives associated with that. The children are certainly closer to Mr. Gray's family than they are to Mrs. Gray's folks.

The distance involved in families may account for part of that, of course.

The circumstances concerning the work schedule, I suppose for lack of a better term, the time that each of these parties are able to spend with the children, again frankly complement each other very well.

Mr. Gray is extremely busy during the week. He has to get up early in the morning.... But Mr. Gray has weekends pretty well free except an occasional requirement that he has to work on Saturday.

Mrs. Gray, on the other hand, has the weeks free during the weekdays, but her weekends—by the time she works 12–hour shifts and has staff meetings on some Sundays, commutes back and forth to Nashville also, sleeps some, but the weekends are pretty well taken for her.

... Mr. Gray has been the one that has provided the religious training and nurturing for the children.

. . . .

The work with the children in other activities also appears to be one of those areas where perhaps both parents are involved and have been involved, but perhaps the evidence shows that Mrs. Gray has done more in this area recently.

. . . .

Candidly, it appears to the Court because of the work schedules as much as anything else, that this may be one of those rare cases where it is appropriate for the Court to divide custody. The custody then would be on a divided basis. The parties would be charged with the responsibility then for continuing to make decisions for the children. The children will be with Mrs. Gray primarily during the week and with Mr. Gray primarily on the weekends.

The evidence does not preponderate against the foregoing findings which are adopted by this Court. T.R.A.P. Rule 13(d).

The determination of custody and visitation rests within the sound discretion of the Trial Judge who is in a superior position to judge the credibility and competency of the parents as custodians. *Edwards v. Edwards,*

Tenn.App.1973, 501 S.W.2d 283, *Scarbrough v. Scarbrough,* Tenn.App.1988, 752 S.W.2d 94. Such findings must therefore be affirmed by this Court. *Dodd v. Dodd,* Tenn. App.1987, 737 S.W.2d 286.

The quoted findings justify the joint custody ordered by the Trial Court. If at any time the problems ordinarily characteristic of joint custody should develop in the present case, the Trial Court retains the power to change the form of custody. Such change will undoubtedly militate against the custodial rights of one of the parents. It therefore behooves both parents to strive mightily to make joint custody work.

No reversible error is found in the consideration of the first issue.

■ As above indicated, the second issue states two issues, (1) failure to award sole custody to appellant, which has been concluded by the above ruling on the first issue, and (2) the visitation granted to the father, which will now be considered.

The divorce decree specifies visitation as follows:

1. The parties will share the joint custody of their children with the children residing primarily with Mrs. Gray during the week and with Mr. Gray on the weekend. During weeks when there is no school on Friday, Mr. Gray will have the children with him from 5:00 p.m. on Friday until 5:00 p.m. the following Monday. On weeks when the children attend school on Friday, Mr. Gray will pick up the children at 8:30 a.m. on Saturday morning rather than 5:00 p.m. on Friday. During those weeks, Mr. Gray will have the children with him on Wednesday evening when he shall pick the children up as soon as he is able after getting off work and he is to return the children by 7:45 p.m.

Mr. Gray shall have four weeks of extended visitation during times when he takes vacation from his employment and, unless the parties agree otherwise, the four weeks would begin on the Monday after the second Friday in each July and continue for a period of 28 consecutive days with Mrs. Gray having visitation, unless an agreement to the contrary is reached, on the second and third Thursdays of said continuous summer visitation and her periods of visitation on said Thursdays shall be from 5:00 p.m. for a period of 48 hours.

Mrs. Gray is entitled to have the children with her for three weekends each year and, unless the parties agree to the contrary, shall be the second weekends, beginning on Friday, in March, July and November.

The parties are to divide various holidays.

Defendant's brief states:

Mrs. Gray asked the Chancellor and now asks this Court to allow the children to have the benefit of her care as sole custodian and to set Mr. Gray's visitation every weekend beginning at noon on Saturday until Monday morning when he takes them to school or until 9:00 a.m. if the children are not in school. (Tr. 214). In doing so, the Court should reverse the Wednesday evening, Friday afternoon/Saturday evening and Monday afternoon visitations awarded Mr. Gray.

This visitation schedule would permit Mrs. Gray to have the children every Friday evening and Saturday morning and insure her at least once a week recreational time for an evening and following morning where they can do things together that they could not otherwise do when the children are expected to go to school. This would eliminate the "passing back and forth" that goes on on Monday afternoons and some Wednesday afternoons. There would be a stable and consistent schedule of visitation every weekend with Mr. Gray while relieving the children of being "passed back and forth" between the parents in a disruptive fashion, alternating between Friday evening visitation and Wednesday evening visitation with Mr. Gray, depending on whether the children attend school on Friday, as is provided by the final decree. (R. 70).

Accordingly, the Court should award Mrs. Gray sole custody of the Gray children and reverse and set aside the current visitation schedule which fluctuates depending on whether the children attend

school on Friday and make it simple and consistent by awarding Mrs. Gray visitation every weekend beginning at noon on Saturday until Monday morning when the children are returned to school or until 9:00 a.m., if the children are not in school, 9:00 a.m. being when Mrs. Gray can return to Murfreesboro. (Tr. 214). Under this award, Mrs. Gray has no objection to the other provisions remaining as the Chancellor so ordered concerning summer visitation, holiday visitation and her 3 weekends a year visitation. (R. 70–71). This award is consistent with what the parties were doing on an agreed basis prior to the divorce. (Tr. 214).

The only justification stated for the requested change is that defendant have more "recreational time" with the children and that the proposed schedule would eliminate "passing back and forth" and be more "stable and consistent." The arguments advanced do not persuade this Court to alter the program so painstakingly and considerately devised by the Trial Judge who has broad discretion in such matters which should not be disturbed on appeal absent obvious error. The second issue presents no reversible error.

■ Finally, defendant insists that the Trial Judge erred in failing to award her $1,165 per month child support as set out in Tennessee Child Support Guidelines.

T.C.A. § 36–5–101(e)(1) provides:

In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties.

D.H.S. regulation § 1240–2–4–.02–7 of Child Support Guidelines provides:

These guidelines are designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year. These guidelines are designed to consider the actual physical custody of the child(ren), regardless of whether custody is awarded to one parent and visitation to the other or such an arrangement is ordered to be joint custody or split custody. In situations where overnight time is divided more equally between the parents, the courts will have to make a case by case determination as to the appropriate amount of support.

The judgment provides:

The Court finds that, since joint custody is being awarded and because the children will be spending substantial amounts of time with both parents, this is an appropriate case to deviate from the child support guidelines but, since the children will be spending slightly more time with Mrs. Gray than with Mr. Gray, it does appear that Mr. Gray should pay child support. The Court finds that Mr. Gray earns $60,-000 per year and that 32% of his net income is $1,150 per month....

This Court does not consider that the custodial situation of the present case is such as to render mandatory support guidelines applicable.

■ Exclusive custody has not been awarded to either parent. Joint custody means shared custody and shared responsibility for support.

■ The judgment satisfies T.C.A. § 36–5–101(e)(1) by finding facts and holding that this is an appropriate case to deviate from the guidelines. This Court concurs in the finding that the application of the guidelines would be inequitable or inappropriate.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed

against the appellant. The cause is remanded to the Trial Court for further proceedings.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.