IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# PAMELA JUNE (HUTCHINSON) SWEAT v. JAMES RETERS SWEAT, III

**An Appeal from the General Sessions Court for McNairy County**
**No. 05-6418     The Honorable Bob Gray, Judge**

---

**No. W1999-00158-COA-R3-CV - Decided April 13, 2000**

---

This is a child custody case. Pamela June Hutchinson Sweat (Wife) filed for divorce against James Reters Sweat, III (Husband) in the General Sessions Court of McNairy County. After a non-jury trial, the court awarded joint custody of the parties two minor sons but made no determination of child support. Wife has appealed.

**Tenn. R. App. P. 3, Appeal as of right; Judgment of the General Sessions Court affirmed and remanded**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which J. HIGHERS, and J. FARMER, joined.

Middlebrooks & Gray, Jackson, For Appellant

Terry Abernathy, Selmer, For Appellee

## OPINION

JUDGE CRAWFORD delivered the opinion of the court.

Wife filed for a divorce on July 9, 1998. At the time of trial, Wife was thirty-three years old, and Husband was forty-three years old. The parties have two sons, James Reters Sweat IV (Rete) and Bailey Hutchinson Sweat, who were ages eight and three at the time of trial. Parties had been married for eight years but separated for over one year. Husband had moved to Florida to work and upon return to Tennessee did not reunite with Wife.

Husband answered Wife's complaint and filed a motion for temporary custody on August 14, 1998. The court conducted a hearing on September 3, 1998 and entered an order for temporary custody, visitation, and child support which reads in pertinent part:

> IT IS FURTHER ORDERED that the minor children shall reside in
> the home of the Defendant/Father, with the Plaintiff/Mother to care
> for the children at the home of the Defendant/Father from 8:00

o'clock a.m. until 5:00 o'clock p.m., Monday through Friday, and

IT IS FURTHER ORDERED that the children shall stay with the Plaintiff/Mother every other weekend from 5:00 o'clock p.m. on Friday until 5:00 o'clock p.m. on Sunday, beginning on August 28, 1998, and on alternate weekends thereafter,...

A second hearing was held on March 15, 1999. Wife testified that the older child had developed discipline problems and had been in therapy to treat adjustment difficulties. Wife testified to Husband's foul language in children's presence, keeping loaded guns in the house, and inconsistent parenting. Husband offered the testimonies of Floyd Ward and Bill Wagoner regarding his fitness as a parent and as a good citizen. The court found that the parties should be awarded joint custody and instructed them to reach an agreement regarding what would be best for the children on a day to day basis and to notify the court of the agreement within thirty (30) days. On April 19, 1999, an order was entered granting the parties a divorce and reserving the custody issue.

On May 3, 1999, a final hearing was conducted. Both Wife and Husband testified to an altercation that occurred in April of 1999. Wife claims to have been assaulted by Husband, and Husband claims that Wife "tackled him." In chambers, the court heard the testimony of two minor children, Brooke Bingham, a seven year old neighbor girl, and Rete Sweat, the parties' eldest son, regarding the altercation. Both children stated that Husband threw a toy truck at Wife.

Larry Griffin of the McNairy County Sheriff's Department testified that he responded to a dispatch regarding the altercation. Exhibit 1 is a copy of an arrest report showing Husband was arrested as a result of the April 20, 1999 incident. Griffin testified that he interviewed both parties after the incident, Wife at her home and Husband at his home. Griffin observed that both parties had apparent physical injury. Wife had abrasions to her hand, elbow, and face, and her clothes were dirty, and Husband had an abrasion on one arm. Griffin testified that the reason that Husband was arrested was because this altercation had taken place at Wife's home. According to Wife's testimony, Husband filed a report with "human resources" alleging drug use by Wife. After an investigation, the file was closed.

At the close of proof, the court continued criminal charges and stated that a protective order for each party would be in place for a period of one year. An order concerning the minor children was entered on May 14, 1999, which states in pertinent part:

That these parties shall share the joint custody of their minor children, to wit: James Reters Sweat, IV, born June 25, 1991, and Bailey Hutchinson Sweat, born July 29, 1996.

IT IS FURTHER ORDERED that the minor children shall reside primarily with their father during the school year, and the minor children shall reside primarily with their mother during the summer

vacation months.

> IT IS FURTHER ORDERED that the standard visitation rules of the Twenty-Fifth Judicial Circuit shall be applicable, and the mother shall have visitation rights and privileges with her minor children in accordance with these standard visitation rules during the school year, and the father shall have visitation rights and privileges with his minor children in accordance with these standard visitation rules during the summer vacation months.

It is from this order that Wife appeals. Wife presents one issue for review as stated in her brief: "[w]hether the trial court erred in its custody award?"

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. Tenn. R. App. P. 13 (d). This presumption applies to child custody cases. ***Hass v. Knighton***, 676 S.W.2d 554, 555 (Tenn. 1984).

Trial courts are vested with wide discretion in the matter of child custody, and the appellate courts should not interfere except where there is a showing of erroneous exercise of that discretion. ***Mimms v. Mimms***, 780 S.W.2d 739 (Tenn. Ct. App. 1989). "The determination of custody and visitation rests within the sound discretion of the Trial Judge who is in a superior position to judge the credibility and competency of the parents as custodians." ***Gray v. Gray***, 885 S.W.2d 353, 354 - 355 ( Tenn. Ct. App. 1994); *see also Scarbrough v. Scarbrough*, 752 S.W.2d 94 (Tenn. Ct. App 1988). In child custody cases, the best interest and welfare of the children are the most significant concerns, and the determination of the children's best interest must turn on the facts of each case. ***Holloway v. Bradley***, 190 Tenn. 565, 230 S.W.2d 1003 (1950). In ***Bah v. Bah***, 668 S.W.2d 663 (Tenn. Ct. App. 1983), the Middle Section of this Court set forth guidelines for making the determination of best interest:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. ***Mollish v. Mollish***, 494 S.W.2d 145, 151 (Tenn. Ct. App. 1972). There are literally thousands of things that must be taken into consideration in the lives of young children, ***Smith v. Smith***, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach...

***Id.*** at 666. T.C.A. § 36-6-106 (Supp. 1999) provides factors to be considered in custody determinations:

> (1) The love, affection and emotional ties existing between the

parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary care giver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided that where there is a finding, under, § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected hereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a pare

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of

each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Most of the statutory factors in this case are not in dispute. The record reflects that the two children are loved by both parents, and both parents provide them with necessities. The altercation between the parents in April does provide evidence of physical and emotional abuse of one parent to the other, however, both parties appear to have contributed to this incident. Both parents are concerned with the welfare of their children, and both fall short of perfection. However, as the Court articulated in *Edward v. Edward*, 501 S.W. 2d 283, 290 (Tenn. Ct. App. 1973), in addressing a parent's fitness for custodial responsibility "[n]o human being is deemed perfect, hence no human can be deemed a perfectly fit custodian." *Id.* at 291. The behavior of both parents appears to have

been at times inappropriate; however, upon review of the record, we cannot fault one party more than the other.

T.C.A. § 36-6-101(a)(2) (1998) states that "neither a preference nor a presumption for or against joint custody, joint physical custody or sole custody is established, but the court shall have the widest discretion to order a custodial arrangement that is in the best interest of the child." In affirming the trial court's award of joint custody, this Court recently stated:

> In Tennessee, the term "joint custody" has no established definition. *See Martin v. Martin,* No. 03A01-9708-GS-00323, 1998 WL 135613, at *2 (Tenn. Ct. App. Mar. 26, 1998)(noting that trial court defined joint custody as "equal input by both parties as to decision making for the children's general welfare, health, education, and extra-curricular activities"); *Gray v. Gray*, 885 S.W. 2d 353, 356 (Tenn. Ct. App. 1994) (defining "joint custody" broadly as "shared custody and shared responsibility for support"). Trial courts are not limited by a narrow definition of joint custody and may outline each party's responsibilities concerning care of the children. *Schwalb v. Langlois*, No. 01A01-9304-CV-00152, 1993 WL 415766, at *2 (Tenn Ct. App. Oct.13, 1993).

*Burlew v. Burlew*, No. 02A01-9807-CH-00186, 1999 WL 545749 **7 (Tenn. Ct. App. July 23, 1999).

In *Burlew, supra,* this Court found that the evidence did not preponderate against the trial court's award of joint custody. It also found the trial court's order confusing, because the designation of the primary custodian changed during the year, creating uncertainty as to how the parents should resolve disputes on long-term decisions. *Id.* at **8. There was no indication in the record that the trial court intended for the parties to bring such decisions to court. *Id.* In addressing this uncertainty, this Court stated that the designation by the trial court of which party had primary custody and which had secondary custody should create "a definite allocation of duties and responsibilities between them." *Id.* (quoting *Schwalb,* at *2). This Court stated the best alternative to resolve the uncertainty appeared to be clarification of the trial court's ruling, and held that since husband was designated as the primary custodian during Christmas holidays and the summer vacation, he shall have the decision making responsibility of the primary custodian for short-term decisions limited to that time. *Id.* As to long-term decisions, wife would remain the primary custodian. *Id.* In addition the parties remained obligated to confer on major decisions and to make a genuine effort to reach an agreement. *Id.*

In the instant case, we cannot say that the evidence preponderates against the trial court's award of joint custody with a designation of primary care alternating between Wife and Husband, and with visitation rights and privileges in accordance with the standard rules for the non-custodial parent. Husband has been an attentive father. It is in the best interest of the parties' minor children for him to continue as the primary caretaker during the school year. However, it is essential that

Wife have an active role in the children's emotional and physical development. It appears that Wife and Husband care for their children despite episodes of inappropriate behavior by both parties. We feel that the trial court's custodial arrangement is in the children's best interest. These arrangements provide "continuity of placement", a consideration stressed by factors two and three of the statute, by maintaining the schedule to which the minor children have become accustomed. *See Burlew, supra.*

Joint custody is suitable to fit the present situation, however, the trial court's order requires clarification as to which party will have the primary responsibility for child rearing decisions. In accordance with our decision in *Burlew, supra*, Wife's designation as the primary custodian during the summer months pertains to short-term decisions limited to that period of time. Husband's designation as primary custodian during the school year applies to long-term decisions. The parties remain obligated to make a sincere effort to reach an agreement on child rearing decisions.

In addition to Wife's issue regarding custody, she requests that the case be remanded for a determination of child support. Wife also requests attorney's fees and expenses for appeal.

As to the issue of child support, § T.C.A. 36-5-101 (e)(1) (Supp. 1999) states:

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

In *Anderson v. Anderson*, 988 S.W. 2d 675 (Tenn. Ct. App. 1998) the Middle Section of the Tennessee Court of Appeals stated in pertinent part:

> Once the parent's income has been determined, the guidelines require the courts to calculate the required amount of support using the percentages provided in the guidelines. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(5). In most circumstances, the result of these calculations becomes the obligor parent's child support obligation. However, a court may deviate from the guidelines if it makes detailed, written findings explaining why the application of the guidelines would be inappropriate and how deviating from the guidelines would be in the child's best interests. *See* Tenn. Comp.

R. & Regs. r. 1240-2-4-.02(7), -.04(2) (1994).

*Id.* at 680 - 81. Unless the trial court finds reasons for deviating from the child support guidelines, it should set child support obligations according to the guidelines. *Id.* at 681.

It appears that the court below did not comply with the quoted statute in departing from the mandatory guidelines. Therefore, the case is remanded for a determination of an award of child support in conformity with the guidelines, or an adequate explanation of not doing so supported by specific findings of facts.

The order of the trial court concerning custody is affirmed, and the case is remanded for further proceedings consistent with this Opinion. Parties are to pay their own attorneys fees for appeal. Costs of appeal are assessed equally between the parties, Pamela June Hutchinson Sweat and James Reters Sweat, III.