IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 26, 2025 Session

**KELLY BROOKE MARTIN v. NGHIA TRONG VAN**

**Appeal from the General Sessions Court for Loudon County**
**No. 2022-DV-53      Henry E. Sledge, Judge**

_____

**No. E2024-01887-COA-R3-CV**
_____

This appeal arises out of a divorce proceeding. The trial court granted appellee a divorce on the ground of inappropriate marital conduct by the appellant, divided the parties' assets and debts, and entered a permanent parenting plan designating appellee as primary residential parent of the parties' minor child, granting the parties equal co-parenting time, and providing appellee with sole decision-making authority with respect to the child. Appellant raises a number of issues on appeal; however, each of those issues has been waived due to appellant's failure to comply with the relevant rules of briefing in this Court. Additionally, appellee argues that the trial court erred in awarding the parties equal co-parenting time and requests his attorney's fees incurred on appeal pursuant to Tennessee Code Annotated section 27-1-122. Finding no reversible error, we affirm the judgment of the trial court. However, in the exercise of our discretion, we decline to find this appeal frivolous and further decline to award appellee his attorney's fees and costs incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Kelly Brooke Martin, Lenoir City, Tennessee, pro se appellant.

Ben H. Houston, II, Knoxville, Tennessee, for the appellee, Nghia Trong Van.

# OPINION

## BACKGROUND

This appeal arises out of a divorce. Kelly Brooke Martin ("Wife") filed a complaint for divorce from Nghia Trong Van ("Husband") on March 10, 2022 in the Loudon County General Sessions Court (the "trial court"). The parties share one child, L.V.,[1] born in March 2013. Attached to Wife's complaint was a proposed permanent parenting plan ("PPP") designating Wife as primary residential parent, granting Wife 245 days of co-parenting time and Husband 120 days of co-parenting time, and providing for joint decision-making authority. Husband filed an answer and countercomplaint for divorce on June 21, 2022. Husband denied that Wife's proposed PPP provided for the child's best interests. Attached to Husband's countercomplaint was his proposed PPP designating the parties as joint primary residential parents, granting the parties equal co-parenting time, and providing for joint decision-making authority.

On August 1, 2022, Wife filed a Petition for Order of Protection ("OP Petition") against Husband, and an ex-parte temporary Order of Protection was granted prohibiting Husband from contacting Wife or the child. Husband was served with a copy of the OP Petition and ex-parte order the following day, and the matter was set for hearing on August 15, 2022.

On August 8, 2022, Husband filed an Emergency Petition for Injunctive Relief and Immediate Temporary Custody. Husband alleged that Wife has a history of mental illness and was prescribed medications; however, he was unaware of whether Wife was taking them. He claimed to have "been concerned about the Wife's mental status for months due to her erratic behavior and outbursts at home." He averred that Wife "claimed that her co-workers were conspiring against her" and had recently "caused an inappropriate outburst at work that [led] to her being put on administrative leave[.]" Husband claimed that the parties had continued cohabiting while the divorce was pending until July 27, 2022, when Wife told Husband she was taking the child to a playdate and left with the child. Husband averred that he had not been able to contact Wife or the child since then and had received messages from Wife's adult son from a prior relationship expressing concerns about Wife's well-being. Husband argued that Wife "lacks requisite parenting skills necessary for the proper care" of the child and is "in need of desperate mental health treatment." Wife opposed Husband's motion, denied that she lacked the skills to care for the child, and denied the need for mental health treatment.

---

[1] This Court has a policy of abbreviating the names of children to protect their privacy and identities.

On August 22, 2022, the trial court entered a bridging order extending the ex-parte order of protection and reset the hearing date on Wife's OP Petition to October 6, 2022. On September 20, 2022, the trial court entered an order by agreement of the parties dismissing the OP Petition as to protections for the child and lifting the ex-parte order with respect to the prohibition on Husband's contact with the child. The agreed order established a visitation schedule between Husband and the child and amended the ex-parte order to permit contact between the parties to coordinate such visitation. On October 6, 2022, the trial court entered another bridging order extending the amended ex-parte order of protection and reset the hearing on Wife's OP Petition to November 18, 2022. The trial court also entered an order on October 6, 2022, allowing Wife's counsel to withdraw and granting Wife thirty days to retain new counsel.

On October 26, 2022, Husband filed a motion to compel Wife to submit to a psychological evaluation to determine Wife's "moral, physical, mental and emotional fitness . . . as it relates to her ability to parent [the parties'] child." On November 18, 2022, Wife filed a handwritten letter, dated November 11, 2022, stating that she had been unable to obtain legal representation and would be proceeding pro se. Following a hearing on November 18, 2022, the trial court dismissed Wife's OP Petition, finding that Wife did not prove the allegations in the petition by a preponderance of the evidence. By separate order entered November 22, 2022, the trial court ordered Wife to submit to a psychological examination with a mental health professional approved by the trial court.

On August 9, 2023, Husband filed a motion for entry of a new temporary parenting plan. Husband attached to his motion a proposed PPP designating Husband as primary residential parent, granting the parties equal co-parenting time, and providing Husband with sole decision-making authority. Husband filed two motions for sanctions against Wife due to her failure to respond to discovery requests he propounded upon her. The trial court entered an order on September 26, 2023, granting Husband's second motion for sanctions and granting him leave to file an affidavit of attorney's fees incurred as a result of the discovery dispute. The trial court also "reiterated" its order that Wife submit to a psychological examination by a court-approved provider, noting that "Wife averred that she obtained psychological evaluations prior to" the hearing on Husband's second motion for sanctions, "without providing proof of same." Finally, the trial court entered a temporary parenting plan designating Husband as primary residential parent, granting the parties equal co-parenting time, providing the parties with joint decision-making authority as to educational and non-emergency health care decisions, and providing Husband with sole decision-making authority as to the child's religious upbringing and extracurricular activities.

On October 2, 2023, Wife filed another proposed PPP designating Wife as primary residential parent, granting Wife 285 days of co-parenting time and Husband 80 days of co-parenting time, and providing Wife sole decision-making authority as to all decisions. On December 22, 2023, Husband filed a motion for civil contempt and third motion for

sanctions against Wife, alleging that she still had not produced the outstanding discovery responses or submitted to the psychological examination as ordered. On February 21, 2024, with leave of the trial court, Husband filed an amended answer and countercomplaint for divorce. Husband attached to this amended filing a proposed PPP designating Husband as primary residential parent, granting Husband 365 days of co-parenting time and Wife no days of co-parenting time, and providing Husband sole decision-making authority. On March 18, 2024, the trial court entered an order drawing a negative inference against Wife at trial for failing to produce complete discovery responses or submit to the previously-ordered psychological examination. Again, the court granted Husband leave to file an affidavit of his attorney's fees related to the sanctions and civil contempt motions for the trial court's approval and Wife's reimbursement. On March 20, 2024, Wife filed an answer to Husband's amended countercomplaint and attached yet another proposed PPP designating Wife as primary residential parent and providing Wife sole decision-making authority. This proposed PPP did not contain a proposed residential schedule.

Following further contentious litigation, the matter proceeded to a four-day bench trial on May 9-10 and July 18-19, 2024. On December 2, 2024, the trial court entered a judgment granting Husband a divorce on the ground of inappropriate marital conduct of Wife. The court noted that Wife's behavior throughout the litigation "caused this court to seriously question her credibility."

The trial court carefully analyzed the factors set forth in Tennessee Code Annotated section 36-6-106 and concluded that it had "no concerns" about the child being in Husband's care but had "some concerns" about Wife's conduct. Despite these concerns, the trial court did not believe that Wife would ever physically harm the child. Ultimately, the trial court entered a permanent parenting plan designating Husband as primary residential parent, granting the parties equal co-parenting time, and providing Husband with sole decision-making authority.

When considering child support and alimony, the trial court found that Wife was capable of earning more than her current income at the time of trial – $58,000 per year – and imputed a higher income of $99,918 per year to Wife. Specifically, the court found that Wife "has a Ph.D. in social work, and she had a much higher income, in 2022, before she was involuntarily placed on administrative leave by the University of Tennessee" and that she "was either terminated, or voluntarily chose not to return to the University." Wife's 2022 tax return reflected income of $99,918 from UT. The trial court determined Husband's income was $108,167.28. Pursuant to the child support guidelines, Wife would have been ordered to pay Husband monthly child support of $37; however, the trial court determined that a downward deviation of $37 was in the child's best interest as both parents had sufficient means to provide for the child's needs. After carefully considering the factors set forth in Tennessee Code Annotated section 36-5-121(i), the trial court found that alimony was not appropriate given the parties' respective earning capacities.

When dividing the parties' property, the trial court awarded each party a vehicle, a bank account, their respective retirement accounts, and various items of personal property from the parties' marital home. The trial court also awarded Wife her separate real estate that she owned prior to the marriage and awarded each of the parties various items of separate personal property. The trial court assessed $77,707.57 in marital debt to Husband and $27,495.21 in marital debt to Wife. Excluding the equity in the marital home, the trial court awarded the parties marital assets and debts of equal net value. Additionally, the trial court ordered the parties to sell the marital home and evenly divide the proceeds, with the exception that $7,053.20 of Wife's share would be paid to Husband's counsel to satisfy the judgment for attorney's fees awarded to Husband as a consequence of his earlier motions for sanctions and civil contempt against Wife.

Wife, proceeding pro se, appealed the trial court's judgment.

### ISSUES

Wife raises five issues on appeal:

1. Whether the trial court erred in awarding joint custody and sole decision-making authority to [Husband] despite substantial evidence of domestic violence, in violation of Tenn. Code Ann. § 36-6-406 and § 36-6-106.

2. Whether the trial court erred in calculating [Wife's] income based on a one-time severance package, thereby failing to award child support and alimony in accordance with Tenn. Code Ann. § 36-5-101.

3. Whether the trial court committed reversible error in its classification and division of marital and separate property under Tenn. Code Ann. § 36-4-121.

4. Whether the trial court erred in dismissing [Wife's] petition for an order of protection when she was unrepresented.

5. Whether the trial court abused its discretion by ordering a Rule 35 mental health evaluation without cause and requiring [Wife] to pay [Husband's] attorney's fees.

Husband raises two additional issues:

6. Whether the trial court erred by awarding the parties equal parenting time where there was overwhelming evidence demonstrating that [] Wife has unresolved mental health issues that impact her ability to

co- parent the minor child, [] Wife has an inability to follow court orders, and [] Wife has consistently sought to undermine the minor child's relationship with Husband.

7. Whether [] Husband should be awarded his attorney's fees on this appeal.

## DISCUSSION

### a.

As she did before the trial court, Wife proceeds pro se in this appeal. Nonetheless, she "must comply with the same standards to which lawyers must adhere." *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As this Court explained:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Id.* at 926–27 (quoting *Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011)).

### b.

Contemporaneous with the filing of her reply brief, Wife filed a "Motion to Supplement the Record on Appeal" requesting that this Court grant her "leave to supplement the appellate record with . . . 1. A Reply Brief of [Wife], . . . [and] 2. A corrected and complete Rule 7 Property Table, identifying all relevant marital assets and debts . . . ."

The record on appeal is filed with this Court by the clerk of the relevant trial court and is meant to "convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(g). "If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth" and "accurately disclose[] what occurred in the trial court[.]" Tenn. R. App. P. 24(e).

The items with which Wife seeks to supplement the record were not filed with the trial court, nor are they necessary to conform to the truth or accurately disclose what occurred in the trial court. Accordingly, Wife's motion is not well-taken and is denied.

c.

We cannot consider the merits of Wife's appeal because she has failed to comply with the procedural rules applicable to this Court, and her issues are thus waived. Rule 27 of the Tennessee Rules of Appellate Procedure requires:

The brief of the appellant shall contain under appropriate headings and in the order here indicated:

(1) A table of contents, with references to the pages in the brief;

(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

* * *

(4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27(a).  "[R]eference in the briefs to the record shall be to the pages of the record involved."  Tenn. R. App. P. 27(g).  Failure to comply with Rule 27 can result in waiver of a litigant's issues.  *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (citing *Duchow v. Whalen*, 872 S.W.2d 692 (Tenn. Ct. App. 1993)).

Similarly, Rule 6 of the Rules of the Court of Appeals of Tennessee requires:

(a) Written argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Wife's appellate brief has several obvious deficiencies as it does not include a table of contents, table of authorities, or statement of facts.  Moreover, although Wife titled a section of her brief "Statement of the Case[,]" it is more akin to a re-statement of her skeletal arguments than a statement "indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below[.]"  *See* Tenn. R. App. P. 27(a)(5).

Most notably, however, the argument section of Wife's brief does not identify any applicable standard of review, contains only two record citations, and makes only passing reference to Tennessee statutes.  Wife does not develop an argument or cite any case law in support of her issues raised on appeal.  As this Court has explained,

> we cannot write [an appellant's] brief for them, and we are not able to create arguments or issues where none otherwise are set forth. Likewise, we will not dig through the record in an attempt to discover arguments or issues that [an appellant] may have made had they been represented by counsel. To do so would place [appellees] in a distinct and likely insurmountable and unfair disadvantage as this Court would be acting as [the appellant's] attorney.

*Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). "If we cannot ascertain that an issue is supported by adequate argument, compliance with [Rule 27] has not been achieved." *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 734 (Tenn. Ct. App. 2018). "It must be clear that a party has constructed an argument regarding his or her position on appeal; if not, the matter is subject to waiver." *Id.* (citing *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006)). In circumstances such as this, where a party makes no argument or cites no authority in support of her issues, or "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

Furthermore, Rule 7 of the Rules of the Court of Appeals of Tennessee requires:

> (a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table . . . list[ing] all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

> (b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

"[W]here an appellant fails to comply with [Rule 7], that appellant waives all such issues relating to the rule's requirements." *Forbess v. Forbess*, 370 S.W.3d 347, 354 (Tenn. Ct. App. 2011) (quoting *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010)). Wife failed to include a Rule 7 table in her principal appellate brief but attached one to her reply brief. "However, that does not rectify the original omission" because reply briefs "'are not vehicles to correct deficiencies in initial briefs.'" *Ronning v. Ronning*, No. E2024-00437-COA-R3-CV, 2025 WL 1432943, at *11 (Tenn. Ct. App. May 19, 2025), *no perm. app. filed*, (quoting *Ingram v.*

*Ingram*, No. W2017-00640-COA-R3-CV, 2018 WL 2749633, at *11 n.4 (Tenn. Ct. App. June 7, 2018)). Moreover, Wife's Rule 7 table attached to her reply brief was also deficient as it did not include the requisite "citation[s] to the record where each party's evidence regarding the classification or valuation of the property or debt can be found." *See* Tenn. Ct. App. R. 7(b).

None of Wife's purported issues are supported by adequate argument, and the failures in her briefing are so substantial that, notwithstanding her pro se status, they cannot be overlooked. Any issues she has attempted to raise are therefore waived. *See Bean*, 40 S.W.3d at 55.

d.

We next turn to Husband's first issue—whether the trial court erred by awarding the parties equal co-parenting time. Husband argues that the trial court erred in crafting a residential schedule that awarded the parents equal co-parenting time because "Wife has unresolved mental health issues that impact her ability to co-parent . . ., [] Wife has an inability to follow court orders, and [] Wife has consistently sought to undermine [L.V.]'s relationship with Husband[.]"

A trial court's decision regarding a residential schedule is subject to review under the deferential abuse of discretion standard. *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)). Our Supreme Court has repeatedly emphasized "the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments." *Id.* (citing *Armbrister*, 414 S.W.3d at 692–93). We "presume that a trial court's factual findings on these matters are correct and [will] not overturn them, unless the evidence preponderates against the trial court's findings." *Id.* (quoting *Armbrister*, 414 S.W.3d at 692). Because "trial courts enjoy broad discretion in formulating parenting plans . . .[,] [a]ppellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion." *Id.* (citations omitted).

As is required when making an initial custody determination, the trial court carefully analyzed the factors set forth in Tennessee Code Annotated section 36-6-106(a) and found:

> **(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;**
>
> Both parents have a strong relationship with the minor child, and both equally performed responsibilities relating to the daily needs of the minor

child. However, [Husband] revamped his work schedule, when [L.V.] was born, so he could work from home 2-3 days per week to assist with the daily needs of the minor child. Additionally, the proof of [Wife]'s inability to effectively co-parent with [Husband], her unfounded accusations of assault against [Husband], and her inability to follow orders of the court raises concerns about the stability of [Wife]'s relationship with the minor child.

**(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;**

[Wife] has not exhibited an ability or willingness to facilitate a close and continuing relationship between [L.V.] and [Husband]. At the outset of this case, she filed an Order of Protection against [Husband], and included the minor child in the Petition for the Order of Protection. However, she later voluntarily dismissed her Order of Protection as it related to [L.V.], but her actions effectively severed any contact between [Husband] and his son for months.

Additionally, [Wife] has not exhibited an ability to follow parenting orders. She was ordered multiple times during this case to complete a Rule 35 Psychological Examination, and to complete discovery. She did not comply with the orders of the court, and was ultimately found to be in contempt. However, [Wife] has been compliant with temporary parenting plans that have been in place during the course of the case, but given her history of failing to follow orders, the court does have concerns that she may not comply in the future.

**(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;**

Neither parent expressed any objection to completing parent education classes.

**(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;**

Both parents have provided the minor child with food, clothing, medical care, education and other necessary care.

**(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;**

While living together, both parents contributed equally in performing parental responsibilities for the minor child. However, [Wife] attempted to keep [L.V.] from engaging in sporting activities that she believed to be too dangerous for him, given his condition of dwarfism,[2] even though [L.V.] had been cleared to participate by an Orthopedic Surgeon.

**(6) The love, affection, and emotional ties existing between each parent and the child;**

According to [L.V.]'s former therapist, Kristina Hall, [L.V.] does not want to hurt either parent's feelings, but he said he would prefer to spend more time with [Husband], but also was afraid of making [Wife] angry. [L.V.] also expressed he has a harder time at the home of [Wife] because he feels she is mad at him.

Ms. Hall admitted she never saw [L.V.] and [Wife] interact, but [Husband] and [L.V.] had open communication, and [L.V.] seemed relaxed around [Husband]. [L.V.] described a number of activities he enjoys doing with [Husband] including: fishing, hiking, and soccer, but admitted he preferred playing video games, because it gets his mind off of things. [L.V.] admitted he plays a lot of video games when he is with [Wife]. [L.V.] said if he had one wish, it would be for his parents to be together and he would live with both; and if he had a second wish, it would be for both parents to be happy and get along. Ms. Hall stated she observed a loving relationship between [Husband] and [L.V.], and that [Husband] was thoughtful in the way he addressed [L.V.].

Based on Ms. Hall's testimony, it is evident [L.V.] loves and is emotionally connected to both parents. However, he seems to have a higher level of comfort and security with [Husband].

---

[2] Wife and L.V. have both been diagnosed with Spondyloepiphyseal Dysplasia Congenita (SEDc), a type of dwarfism.

**(7) The emotional needs and developmental level of the child;**

[Wife] is also diagnosed with Dwarfism, and she has used her non-medical expertise to override opinions of doctors when it comes to extracurricular activities for [L.V.]. She also unilaterally took it upon herself to tell [L.V.] the Beckwiths were [Husband]'s fake family[3] which confused [L.V.], and caused him to question the truthfulness of [Husband]. Additionally, [Wife] has belittled [Husband] in front of [L.V.] which diminishes [Husband]'s ability to exercise parental authority with the minor child. For all of these reasons, [Wife]'s conduct gravely concerns the court with respect to her ability to provide for the emotional needs and development of the minor child.

**(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure . . .;**

The mental and emotional fitness of [Wife] became an issue early in this case, and [Husband] filed a Motion seeking a Rule 35 Psychological Examination for [Wife]. [Wife] agreed to undergo the examination, and it was so ordered by the court. However, [Wife] never completed the examination despite the court extending the deadline for completion on multiple occasions. Ultimately, the court found [Wife] to be in contempt, and ruled that her failure to complete the Rule 35 Psychological Examination will result in the court drawing a negative inference against her with regard to the court[']s analysis of these factors.

**(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;**

[L.V.] has a relationship with his brother [], and he is not prevented, by either parent from having contact with him. [L.V.] called the Beckwiths

---

[3] As the trial court found:

[Husband] has no relationship with his biological family. When he was 18 years of age, he was basically taken in by the Beckwith family, and although there is no blood relation between [Husband] and the Beckwiths, they refer to him as their son, and he refers to them as his parents. Additionally, he refers to the children of the Beckwiths as his siblings.

his grandparents, but [Wife] has caused him to be confused by her unilateral decision to tell [L.V.], they are not [Husband]'s real family. [L.V.] has done well in public school, and participated in a Chess Club and Cooking club, but during the months [Wife] had sole custody, following her filing for the Order of Protection, she enrolled [L.V.] in virtual school and limited his interaction with other students. This also resulted in [L.V.] being unable to participate in the Chess Club or Cooking Club. Additionally, [Wife] interfered in [L.V.]'s ability to play soccer, and she harassed his boy scout leader.

**(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;**

[L.V.] does have a close relationship with both parents, and he wants to be with both parents. Based on his comments to Ms. Hall, [L.V.] seems to be more comfortable with [Husband], but stated if he had one wish it would be for his parents to remain together, and that he live with both of them. [Wife] certainly loves [L.V.], and is protective of him, in fact she is overprotective of him, replacing the judgment of medical experts with her own which has prevented [L.V.] from being able to engage in activities he enjoys. For these reasons, the court finds it is appropriate for [L.V.] to have maximized co-parenting time with both parents, but all decisions should be made by [Husband] with regard to medical, education, extracurricular, mental and religion.

**(11) Evidence of physical or emotional abuse to the child, to the other parent, or to any other person, including the child's siblings. The court may, where appropriate, refer any issues of abuse to juvenile court for further proceedings;**

There is no evidence of physical abuse by either parent upon [L.V.]. However, [Wife] has engaged in conduct that causes the court concern. She has caused emotional stress to [L.V.], such as unilaterally telling him about [Husband]'s "fake" family relationship with the Beckwiths.

**(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;**

There are no other individuals that reside in or frequent the home of either parent and interacts with the child.

**(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. . . .;**

[L.V.] is only eleven (11) years of age, and this factor is not applicable to the court's analysis.

**(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules;**

Neither parent's employment schedule prevents them from being able to co-parent [L.V.]. Both have already made arrangements for care while they are working.

**(15) Any other factors deemed relevant by the court; and**

The court has already addressed all factors that create the most concern for the court as far as establishing a permanent parenting plan.

**(16) Whether a parent has failed to pay court-ordered child support for a period of three (3) years or more.**

This factor is not applicable.

In conclusion, after reviewing all of the relevant factors above, the court has no concerns with [L.V.] being in the care of [Husband]. The court does have some concerns about the conduct of [Wife]. Her actions in seeking the Order of Protection to protect [L.V.] alienated [L.V.] from [Husband]. [Wife] filed the Petition for the Order of Protection on August 1, 2022. On September 20, 2022, an Agreed Order was entered dismissing the Order of Protection as to [L.V.] only.

[Wife]'s actions in unilaterally telling [L.V.] about [Husband]'s relationship with the Beckwiths caused confusion for [L.V.], and a distrust of [Husband]. Her actions in refusing to follow court orders relating to discovery, and the Rule 35 Psychological Examination causes concerns of [Wife]'s ability to follow future co-parenting court orders. [Wife]'s interference with [L.V.]'s ability to play soccer, and his therapy with Kristina Hall cause the court to question her ability to make decisions that are in the best interest of [L.V.].

There is no doubt [Wife] loves [L.V.], and he loves her. The court does not believe [Wife] would ever physically harm [L.V.], but she is

overprotective of [L.V.] and tries very much to control every situation often replacing expert opinions with her own.

The court also finds, on August 8, 2022, [Husband] filed a Motion for Injunctive Relief and Immediate Temporary Custody of the minor child. . . . On September 26, 2023 the court entered a temporary parenting plan whereby the parties would exercise a 50/50 co-parenting plan, and [Husband] was granted sole decision making for religious upbringing and extracurricular activities. When the trial of this matter began on May 9, 2024, the Motion for Emergency Custody had still not been adjudicated, and [Husband], through his counsel, voluntarily nonsuited his Petition. Since going to the 50/50 co-parenting plan on September 26, 2023, there have been no allegations, against either party, for being unable to comply with the court's order, or for any immediate risk of danger to the minor child. For these reasons, and based on its analysis of all the relevant factors set forth above, the court finds it to be in the child's best interest to continue to have a 50/50 co-parenting plan between the parents, but all medical, educational, mental, extracurricular and religious decisions are to be made by [Husband]. Additionally, [Husband] is designated the primary residential parent.

Section 36-6-106(a) requires that a trial court's custody determination "shall be made on the basis of the best interest of the child" and "shall . . . permit[] both parents to enjoy the maximum participation possible in the life of the child[.]" Despite this requirement, this Court has "reaffirmed the principle that the best interest of the child, not the 'maximum participation possible' concept, remains the primary consideration under the governing statutory scheme[.]" *Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *7 (Tenn. Ct. App. Aug. 29, 2019).

Husband argues that "equal time parenting plans are inherently unworkable in high conflict cases like the case at bar where the parents have demonstrated an inability to cooperate with one another." However, Husband does not point to any evidence in the record to show that the parties have been unable to cooperate with one another when it comes to following the various court-ordered temporary parenting plans. Although a child's best interest generally requires a "harmonious and cooperative relationship between parents[,]" Tennessee law does not require that equal co-parenting time "be awarded only when the parents are on friendly terms[.]" *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *7 (Tenn. Ct. App. July 19, 2005) (citations omitted). Unfortunately, conflicts between divorced parents are not unusual nor unique to this case. Fortunately, the animosity between the parties in this case is not so severe as to absolutely militate against an award of equal co-parenting time. However, we caution the parties that if at any time they cannot maintain a harmonious and cooperative relationship such that the current parenting plan is no longer in L.V.'s best interest, the trial court retains jurisdiction to modify the plan. "It therefore behooves both parents to strive

mightily to make [the current parenting plan] work." *Gray v. Gray*, 885 S.W.2d 353, 355 (Tenn. Ct. App. 1994).

Husband also asserts that the trial court "relied heavily on the fact that the parties had been operating under a fifty-fifty temporary co-parenting plan for some time prior to trial." Husband argues that this runs afoul of the requirement of Tennessee Code Annotated section 36-6-406(e), which prohibits a trial court from "draw[ing] any presumptions from the temporary parenting plan" when entering a permanent parenting plan. However, the trial court did not state that it was drawing any presumption from the temporary parenting plan. Instead, when considering "the likelihood of each parent . . . to honor and facilitate court ordered parenting arrangements and rights[,]" *see* Tenn. Code Ann. § 36-6-106(a)(2), it noted that Wife had been compliant with the temporary parenting plans entered during the course of this case. Similarly, the trial court found that since a temporary parenting plan granting the parties equal co-parenting time was entered, "there have been no allegations, against either party, for being unable to comply with the court's order, or for any immediate risk of danger to the minor child." Given Wife's history of not following other court orders entered in this case and Husband's concerns about the parties' ability to cooperate, it was reasonable for the trial court to consider the fact that the parties had already been successfully exercising equal co-parenting time for more than eight months prior to the trial in this matter. This consideration by the trial court does not run afoul of the prohibition of section 36-6-406(e).

The trial court appropriately considered the factors of section 36-6-106. Clearly the trial court had some concerns about the Wife's decision making, which it addressed by making Husband the primary residential parent and sole decision maker, despite awarding the parties equal co-parenting time. Upon careful review, we conclude that the evidence preponderates in favor of the trial court's determination that the PPP and the residential schedule contained therein were in the best interest of L.V. and that the trial court did not abuse its discretion in this regard. Therefore, we affirm the trial court's judgment.

e.

Finally, Husband argues that Wife's appeal should be deemed frivolous and that he should be awarded his attorney's fees incurred on appeal. "'A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed.'" *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) (quoting *Indus. Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the

appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

In the exercise of our discretion, we decline to find Wife's appeal frivolous and further decline to award Husband his attorney's fees and costs incurred on appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the General Sessions Court for Loudon County. Costs of this appeal are taxed one-half to the appellant, Kelly Brooke Martin, and one-half to the appellee, Nghia Trong Van, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE